McBRIDE, Judge.
Plaintiff is the collision insurer of a 1952 Pontiac sedan automobile, the policy contract having been issued to Milton Hotard, in whose name the title to the automobile stands. As the result of the car having been damaged to the extent of $103.91 on January 18, 1953, while it was located in the Dixie Parking Lot No. 4, plaintiff paid the amount of its contractual liability to Milton Hotard and took from him a subrogation of his claim against the proprietor of the parking lot. This suit is brought on that subrogation. The petition alleges that the automobile was damaged while in the custody, care and control of the defendant in its capacity of compensated depositary and that defendant is liable for the amount of the damage because of its negligence. Defendant denies negligence on its part and alleges that the accident in which tlie car was involved resulted solely and entirely from the negligence of Donald Hotard, who is the son of Milton Hotard. In the *234 alternative, Donald Hotard 'is charged with contributory negligence.
Plaintiff recovered a judgment below and defendant has appealed.
Donald Hotard at the time of the accident was the emancipated minor son of Milton Hotard. Although he bought and paid for the Pontiac automobile, the title thereto was, for some reason or other, placed in the name of Milton Hotard. Donald Hotard also paid the premium • on the policy of ■ collision insurance which designates Milton Hotard as the insured.
The accident which befell the automobile occurred because of a most novel circumstance. Donald Hotard had been unfortunate enough to lose the lower portion of his right leg and this physical handicap caused him to have some extraordinary alterations made to the Pontiac sedan when he bought it a few months before the accident. It is a well-known fact that manufacturers of of automobiles in the United States conform to a standard pattern with respect to the position of controls, and floor accelerators on automobiles are customarily located to the right of the brake pedal so that a car may be accelerated or braked by the operator of the vehicle by the use of the right foot. Young Hotard, because of his physical condition, found it necessary to have the accelerator on the Pontiac moved from its usual position and placed to the left of the brake pedal so. that he could manipulate the accelerator and the brakes by. using his left foot.
About 8:00 p. m. on the date in question, Hotard drove the automobile into defendant’s establishment for the purpose of having it stored or “parked” there while he attended a theater. He stopped,' alighted from the car, and then paid the required charges to McKnight, defendant’s employee, who handed him a claim check. Hotard then departed. After giving his attention to two other automobiles, McKnight returned to the Hotard car in order to place it in a storage space selected by him. To do this, of course, it was necessary that he enter and drive Hotard’s car.
There is a sharp dispute as to whether Hotard had left ' the motor of the car running before departing from defendant’s establishment. Hotard denies that the motor was running, while, on the other hand, McKnight declares that not only did Hotard permit the motor to run but that he also left the automobile in “gear.”
McKnight’s story is that he got into the automobile and did nothing more than “put my foot down where I thought was the clutch” and the car lurched forward striking three other automobiles. However, when Hotard returned to the garage a few hours later, he was not informed that his automobile had been involved in an accident, nor .did he notice its damaged condition, and it was only on the day following that he learned of what had transpired while his automobile was in the defendant’s parking lot.
It would be well to mention here that the Plotard car is not one with the standard transmission. The car is of that type which is equipped with “hydromatic drive” or, in other words, has an automatic shift, and the design of this system of transmission calls for no clutch pedal. The gears are operated by the manipulation of an indicator lever in conjunction with an indicator panel which is located to the front of the steering post. If all that McKnight did was to depress the accelerator instead of the clutch pedal for the car to have gone forward, the hydromatic indicator must have been set on one of the forward gears.
We cannot believe that Hotard left the motor running and the transmission set in one of the forward gears, because had this been the case, the car would not have remained in a stationary position while McKnight attended to the other two cars before attempting to park the Hotard car. McKnight concedes that when the motor is running and the hydromatic indicator is set for one of the forward gears, the car will move unless the emergency brake is “pulled.” But when asked whether the emergency brake had been “pulled,” McKnight stated that he did not remember. *235 Our opinion is that when Hotard turned the automobile over to McKnight’s charge, the ignition had been turned off, so the question whether the emergency brake had been applied assumes no importance.
It occurs to us that McKnight must have done more than just reach out with his foot, because the car could not have started forward unless he had turned on the ignition to start the motor and then had manipulated the indicator lever so as to set the transmission at one of the forward gears.
McKnight has had thirty years’ experience in driving automobiles and has been a parking lot attendant for several years. We think that because of such long experience with automobiles, he should have noticed at a glance that the automobile was not equipped with standard transmission, and why he reached for the clutch is beyond us. If after starting the motor and setting the indicator at the desired forward gear, McKnight had used prudence in locating and depressing the accelerator instead of attempting to operate the car by reflex action no matter on which side of the brake pedal the accelerator was located, the car would not have moved as rapidly forward as it did. There is no question that McKnight was negligent under the circumstances and the defendant must respond therefor.
Under our law a parking lot proprietor who collects a fee for parking automobiles is a compensated depositary who must be held strictly to the obligation of taking good care of the deposited automobile and is liable to the owner for any damage caused by his negligence. LSA-C.C. arts. 2937, 2938; Marine & Motor Ins. Co. v. Cathey, 8,La.App. 240; Marine Ins. Co., Limited, of London, England v. Rehm, La.App., 177 So. 79.
Alternatively, it is contended that Donald Hotard was eontributorily negligent in that he failed to inform McKnight of the unusual characteristics of the automobile so as to acquaint McKnight with the dangers attached to operating the car. There is some testimony pro and con as to whether the attendants at defendant’s parking lot were acquainted with the automobile, but after reading the testimony carefully, we are not at all sure that McKnight had any knowledge of the misplaced accelerator, but even if Hotard failed to inform him of that circumstance, we do not think that the failure to give notice constituted negligence on Hotard’s part. Any experienced operator should have driven the car without difficulty.
The plaintiff took a subrogation from Milton Hotard, its insured, in whose name title to the car is registered and to whom the policy of insurance was issued, and, therefore, plaintiff has the right of recovery on the subrogation.
Therefore, the judgment appealed from will be affirmed.
Affirmed.