166 So.2d 566 (1964)
James R. LEWALLEN, William L. Munson
v.
BOARD OF LEVEE COMMISSIONERS OF ORLEANS LEVEE DISTRICT and Insurance Company of North America Companies.
No. 1526.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1964.
*567 Baham & Curet, Alvin G. Baham, Gretna, Leroy R. Curet, for plaintiffs-appellees.
Lemle & Kelleher, Albert H. Hanemann, Jr., New Orleans, for defendants-appellants.
Before SAMUEL, CHASEZ and BARNETTE, JJ.
CHRIS T. BARNETTE, Judge pro tem.
Plaintiffs are the owners of an airplane bought by them in a state of incompletion and which they reassembled at considerable cost for parts and the application of many hours of labor. When the plane was substantially restored to an operable condition (the tail wheel was missing), it was taken by them to the New Orleans Municipal Airport, operated by defendant Board of Levee Commissioners of the Orleans Levee District, where arrangements had been made for the lease of tie-down space for storage.
There appears to be no dispute that the contract between plaintiffs and defendant, through its airport employees, was one of lease whereby the plaintiffs were assigned a space selected by themselves for the monthly rental of $15.00. The particular spot, from among several possible ones, selected by plaintiffs was at the east end of the field on what is described as the National Guard Ramp. Plaintiffs were responsible for securing the plane properly on this location and testified that they used a new 1-inch manila rope with which they tied it down securely to metal rings imbedded in the concrete. It remained on this location until May, 1961, when it was moved by defendant to a different location.
Plaintiffs assert that the spot chosen by them for storage of the plane was because the close proximity of the National Guard building afforded some measure of protection against the elements.
Sometime in May, 1961, plaintiffs' plane along with others was moved from the National Guard Ramp to another ramp to make room for a truck rodeo. At this new position it was tied down by airport employees. After the rodeo, the other planes were moved back to their respective locations, but plaintiffs' plane remained where the airport employees had put it, probably because of inconvenience in moving it due to the absence of the tail wheel. Plaintiffs were not informed of the reasons for their plane's removal to the new position, which was explained by defendant's witness on the ground that plaintiff's telephone had been discontinued. However, shortly after the plane had been moved, plaintiff Munson became employed at a hangar on the airport property about 1,200 feet from the place where his plane was tied down and was aware that it had been moved. He admits that he saw it in this new position but made no close inspection to determine if it was secured properly with adequate tiedown ropes.
On June 10, 1961, a severe thunderstorm with wind gusts of approximately 50 knots struck the airport. Plaintiffs' plane was blown over and severely damaged when the tie-down ropes were broken.
This suit was brought for recovery of damages based upon the allegation that the defendants became bailees of their plane when they moved it to the new location, and that as bailees for their own benefit and convenience they owed a duty of *568 protection of plaintiffs' property which they did not owe as lessors of rented space. It is charged that defendants were negligent in that they did not tie down the plane adequately and, specifically, that old and rotten ropes of insufficient size were used. Further, plaintiffs allege that the United States Weather Bureau had issued a warning of the possibility of severe winds in the area in sufficient time for defendant to take precautionary measures, but that none were taken.
The defendant Board of Levee Commissioners denies that a contract of bailment existed, but rather one of lease and that it owed no duty of protection of plaintiffs' property as a bailee or depositary. It also denied negligence in moving the plane or in the manner it was tied down. Defendant further pleads the negligence of the plaintiff Munson who was aware of the plane's removal and inspected it on the new location without complaint of the manner in which it had been secured to the tie-down rings, and who, in effect, acquiesced in all that the defendant's employees had done. Plaintiffs' deny their contributory negligence, asserting that they had a right to rely on the airport authorities who are presumed to be experienced in such matters.
From a judgment awarding plaintiffs damages in the amount of $1,966.33, the defendants have appealed.
In order to determine what duty the defendant owed plaintiffs for protection of their plane, it is necessary to ascertain the nature of the contract between them. Initially there was a simple contract of lease of space for storage of plaintiffs' plane. Such contracts appear to be common and in due course of the operations of the airport. When the defendant's employees took it upon themselves to move the plane to a different location, one of their own choosing, for their own convenience or benefit, the contract then became one of bailment. The defendants put themselves in a position analogous to an automobile parking lot or storage garage which exercises control over the vehicle left in storage.
This subject is discussed under the title "Bailments" in 8 C.J.S. § 1 at p. 317, and we think the distinction there made between a lease of parking space where the automobile owner retains control of the vehicle from one in which the parking lot attendant takes possession and moves the automobile from place to place for his own convenience is clearly applicable here. In the latter case, the contract is one of bailment, and the duties and responsibilities of the parties are governed accordingly. This distinction has been observed and followed by this Court in General Accident Fire & Life Assur. Co. v. J.F.D.L., Inc., La.App., 148 So.2d 857; Lee v. New Orleans Roosevelt Corporation, La.App., 106 So.2d 855; Jacques v. City Parking Service, La.App., 97 So.2d 78, and Great American Indem. Co. v. Dixie Auto Park. & S. Corp., La. App., 84 So.2d 233. These cases hold that the parking lot or garage is a "compensated" depositary, or known in the common law as "compensated bailee," and that the liability of such bailee is determined by LSA-C.C. art. 2937 which provides as follows:
"The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."
The following article emphasizes this duty as follows:
"The provision in the preceding article is to be rigorously enforced: (Emphasis ours.)
"1. Where the deposit has been made by the request of the depositary.
"2. If it has been agreed that he shall have a reward for preserving the deposit.
"3. If the deposit was made solely for his advantage.
"4. If it has been expressly agreed that the depositary should be answerable *569 for all neglects." (LSA-C.C. art. 2938)
It is our opinion that the defendant, who took it upon itself to act as a depositary of plaintiffs' property, is bound to the duty imposed by these articles.
Having determined the measure of defendant's responsibility, we now address ourselves to the facts to determine if there has been a breach of the duty imposed. We have the benefit of the findings of fact by the trial judge as set forth in his reasons for judgment. A careful review of the testimony does not reveal manifest error, but on the contrary his findings of fact are well supported by the testimony of the witnesses.
We agree with the trial court that the testimony establishes factually that plaintiffs tied down their airplane with new 1-inch rope and that when defendant's employees moved it to a different location other ropes, "worn and apparently rotten," were substituted. Pieces of ropes filed in evidence and properly identified support the correctness of this factual conclusion. Furthermore, the defendant had advance warning of the probability of a severe thunderstorm but took no steps to protect plaintiffs' property from possible damage. These acts of negligence and lack of concern are not in accord with the care one might be expected to use in the protection of his own property, which is the duty imposed on the depositary by LSA-C.C. art 2937.
Defendants have urged the defense of contributory negligence predicated upon the argument that the plaintiff Munson, employed in a hangar nearby, had knowledge of the removal of the plane to a different location and had actually observed the manner in which it was tied down but had made no complaint. It is argued that he acquiesced in all that defendant's employees had done. The trial judge rejected this argument holding that Munson was not negligent in failing to complain saying it "is quite possible that the space and the tie-down ropes in the new location may have been sufficient for normal everyday use and yet not be at all proper or sufficient for use during a thunderstorm." We find nothing in this inconsistent with the facts disclosed in the record. However, we do not agree with the trial judge wherein he said the defendants "owed an absolute duty to plaintiffs to protect the property under all circumstances as long as the property remained under its control." To carry the liability of the depositary to this extent would virtually make him an insurer of property in his care. This is not the intention of LSA-C.C. art. 2937, and we agree with defendants that the trial judge was in error in this respect and that the law of this state does not impose an "absolute duty under all circumstances." However, for the reasons already discussed we think there was liability because of the breach of duty imposed by LSA-C.C. art. 2937.
Defendants' argument that the damage was caused by an act of God does not impress us, since the storm was not such an unusual one, nor one from which defendants could not reasonably have protected plaintiffs' property if it had heeded the warning timely received.
Defendants contend that the measure of damage cannot exceed $800.00, the sum paid by plaintiffs for the aircraft. This is without merit. The plaintiffs bought parts amounting to several hundred dollars in value and expended many hours of labor in assembling the plane to practical completion.
The trial court's finding of damages in the amount of $1,966.33 is supported by the testimony and will not be disturbed. There is no manifest error.
The plaintiffs in oral argument and in their brief ask for an increase in the award of damages. They have not appealed from the judgment rendered below and have not answered the appeal of defendants-appellants, *570 in the absence of which the appellee is without a basis for modification of the judgment of damages against the appellant and their argument will not be considered. LSA-C.C. art. 2133; Rader v. Rader, La.App., 126 So.2d 189
For these reasons, the judgment appealed from is affirmed at appellants' cost.
Affirmed.