250 So.2d 451 (1971)
ST. PAUL FIRE & MARINE INSURANCE COMPANY
v.
ZURICH INSURANCE COMPANY and Apcoa Parking Lot.
No. 4547.
Court of Appeal of Louisiana, Fourth Circuit.
July 15, 1971.
*452 Morphy & Freeman and Elmore P. Becker, Steven F. Faulkner, Jr., New Orleans, for plaintiff-appellant.
Montgomery, Barnett, Brown & Read, Daniel Lund, New Orleans, for defendants-appellees.
Before REDMANN, GULOTTA and STOULIG, JJ.
STOULIG, Judge.
This action seeks to fix responsibility for the theft of an automobile from the "long term" parking lot at the New Orleans International Airport, Kenner, La. The car belonged to Jerry Beach, who parked it there on August 10, 1969. When he returned to pick it up, some three weeks later, it was missing.
Mr. Beach promptly reported the theft, and the vehicle was soon recovered stripped beyond economical repair. He then filed a claim with his insurer, St. Paul Fire & Marine Insurance Co., for the loss of the vehicle, the loss of certain valuables and movable property in the car, and the expense of renting a substitute vehicle. St. Paul honored the claim and lodged this action as subrogee, against Apcoa, the lot owner, and Zurich, its insurer.
After hearing, the trial court concluded that under the particular circumstances of this case proof of negligence was necessary, and, further, that none was made. The claim was dismissed and St. Paul has appealed.
As a general rule parking lots are treated as compensated depositaries against whom negligence need not be proved in cases of vehicle loss or theft. Norwegian Government Seamen's Service v. Himbert, 228 So.2d 757 (La.App., 4th Cir. 1969); Lee v. New Orleans Roosevelt Corporation, 106 So.2d 855 (La.App., Orleans, 1958); Continental Ins. Co. v. Himbert, 37 So.2d 605 (La.App., Orleans, 1948); LSA-C.C. arts. 2926, 2929, 2932.
*453 This rule is rigidly enforced. It is however, subject to a limited exception, recognized both at common law and in Louisiana, in favor of certain lots whose operations are restricted and structured so as to make it clear that the patron-motorist merely leases parking space rather than making a deposit of his car. See Wall v. Airport Parking Co. of Chicago, 41 Ill.2d 506, 244 N.E.2d 190 (1969); Lewallen v. Board of Levee Com'rs of Orleans L. Dist., 166 So.2d 566 (La.App., 4th Cir. 1964).
In order to constitute a compensated deposit, it is essential that there be delivery of the object to be deposited, an acceptance of the deposit, an assertion of custody and control by the depositary, and a payment of consideration. Generally speaking, as noted, parking lots fall into this category. However, a mere lease of parking space contemplates an entirely different arrangement. It usually involves long term parking, with its attendant continuous exposure of the vehicle to the danger of theft for lengthy periods, at modest rates not commensurable with the costs involved in extensive security precautions necessary to deter a sophisticated theft. A recent annotation at 38 Am.Jur.2d, Garages, etc., Sec. 28, p. 335, is relevant:
"When a motor vehicle is left in a garage or parking lot, the relationship between the operator of such establishment and the vehicle owner may be one of bailment, lease, or license, depending upon the circumstances of each case.18 Generally, a bailment is created where the operator of a garage or parking lot has knowingly and voluntarily19 assumed control, possession, or custody of the motor vehicle;20 if he has not done so, there may be a mere license to park1 or a lease of parking space.2 A garage keeper who accepts for compensation a motor vehicle for live storage is a bailee for hire,3 but he may be only a lessor where the vehicle is stored for prolonged periods.4 The courts have apparently considered the lack of control over a motor vehicle which is possessed by a garageman with whom it is stored for a long period indicative of the absence of the bailor-bailee relationship.5 (Emphasis supplied)
Additionally, the single ticket system is utilized. This is solely for the purpose of fee computation, as opposed to the standard two part ticket used by the paid depositary for identification, return of the vehicle, and the determination of parking charges.
Other factors indicating a mere lease of space (often incorporated in the "U-Park" system) are parking by the owner himself, the retention of keys and free access to the car by the owner, unrestricted movement by him while on the lot, and similar considerations tending to show that there was in no way an assumption of control or act of dominion by parking lot personnel. Simply, it is a self-service parking operation.
When all of these factors are present, the exception applies, because it is then clear that the surrender of custody essential to a compensated deposit has not been made.
Here, inasmuch as the proof was clear that each of these factors did exist, we concur with the trial court in holding proof of negligence is necessary in order to visit liability upon Apcoa. We also share the view that, clearly, no such negligence was proved. The evidence reflects that the defendant maintained a paved parking area with 1010 defined spaces, surrounded by a 6 foot fence topped with barbed wire. It was well lighted with more than twenty-five mercury vapor lights comparable to those used for public street lighting. Entry to the area was through an automatic device, commonly known as a "ticket spitter," which dispensed the parking tickets and lifted the barrier. In a booth at the exit gate was stationed an attendant, whose primary function was to compute and collect the parking *454 fee; however, he also exercised general supervision of the area. Plaintiff has failed to bear the burden of proving that the defendant did not maintain suitable facilities, or that its operation was not conducted in a prudent manner, commensurate with the type of service offered. Furthermore, it did not establish that the defendant, either by acts of commission or omission, breached a legal duty owed to its customer.
Accordingly, the judgment appealed is affirmed.
Affirmed.