SARTAIN, Judge.
This is an action in tort in which a money judgment is sought for certain damages done to an airplane owned by the plaintiff and allegedly deposited with the defendant, J. D. Hair, et al, d/b/a Hair Flying Service, and for other expenses incurred by the plaintiff related to that damage.
The facts before us are relatively undisputed. Mr. Richard E. Coe, the sole owner and stockholder of Coe Oil Service, Inc., a Kentucky corporation, and Mrs. Coe, were on December 5, 1968, enroute in a Cessna Sky Hawk airplane owned by the corporation from Cynthiana,- Kentucky, to Houston, Texas, when inclement weather forced them to land at Ryan Field in Baton Rouge, Louisiana. Upon landing, they were waived toward the facilities of the defendant, located on the east side of the air field, by a Hair employee called a “lineman”, whose duties it was to attract incoming private aircraft to the defendant’s business area for refueling, maintenance, and other services. After taxiing to the Hair Building, Mrs. Coe alighted from the aircraft to make arrangements for overnight motel accommodations. She entered the offices of the defendant and, with the help of Mrs. June Kern, the bookkeeper, made the necessary arrangements and notified her husband, who had remained in the aircraft, accordingly. Those accommodations being finalized, Mr. Coe then inquired as to “tie down” facilities for the plane, had it filled with gas for the next day’s flight and, with the guidance of Hair’s lineman, moved the plane to the “tie down” spot where the employee secured it for the night.
As the Coes were carrying Christmas presents and other valuable items on the plane, they expressed concern about its *109 overnight safety to Mrs. Kern and the “lineman” but were told that several planes were regularly left overnight, unlocked, at the Hair facilities without incident, and that their valuables would probably be all-right if left in the plane. It was also pointed out to them that a Louisiana State hangar was close by that had guards on nighttime duty, thus insuring the security of aircraft in the Hair area. The Coes then, with the help of the “lineman” arranged their gifts in the plane, covered them with a blanket, locked the plane, and departed for their motel. As they departed, Mr. Coe offered the airplane key to Mrs. Kern who refused it, she saying that “It will be perfectly allright until morning.” No charge was made for the overnight use of the “tie down” facility.
During the night, the aircraft was moved from the place where it was secured and wrecked, several hundred yards from the defendant’s facilities. The record does not positively indicate just what caused its movement, but we gather that, in all likelihood, a theft was attempted, as opposed to vandalism or other possibilities. Considerable damage was done to the Sky Hawk for which the Coes now seek recovery, in addition to other related expenses and inconvenience compensation.
The threshold question presented and, to a great extent, determinative of the defendant’s liability herein, is the characterization of the legal relationship which existed between the Coes and the appellees. More particularly, was this a case of compensated deposit, as provided for by our Civil Code, or one of lease, or one of a business invitee nature? The trial judge had obvious difficulty with this perplexing problem but concluded that the Hairs were a compensated depositary in view of the fact that fuel had been purchased by the plaintiffs, but he found no negligence on the part of the defendants, thus denying liability. Able counsel for the appellant has forcefully asserted as error the failure of the court below to apply certain prior jurisprudential pronouncements to the effect that once a situation of compensated deposit is found, that the burden of proof then falls upon the depositary to exonerate itself from negligence. Brown & Blackwood v. Ricou-Brewster Building Co., 239 La. 1037, 121 So.2d 70 (1960), and authorities cited therein.
Although similarities exist between the case at bar and one of compensated deposit, we are unable to equate this matter to that concept. As noted in St. Paul Fire & Marine Ins. Co. v. Zurich Insurance Co., 250 So.2d 451 (La.App. 4th Cir. 1971)
“In order to constitute a compensated deposit, it is essential that there be delivery of the object to be deposited, an acceptance of the deposit, an assertion of custody and control by the depositary, and a payment of consideration. Generally speaking, as noted, parking lots fall into this category.”
Here, however, several or all of the elements noted above are not present. Whether there was delivery of the aircraft into the hands of the Hair employees is, at best, questionable, as it appears that at no time did the Coes surrender possession of it to the “lineman”. The defendant’s employees clearly did not accept the aircraft, as the keys were offered to them but were refused; no custody and control of the plane was ever asserted by the defendant’s personnel and there was no payment for the “tie down” service.
The compensated deposit concept is most often applied in parking lot situations. As we view the facts before us, there appears to be little analogy between those situations and the relationship between the parties herein. It seems clear that the defendant’s personnel did not indicate to the Coes that their company would be responsible for overnight safety or that any security was provided by the defendant itself. They told the Coes that their airplane and possessions probably would be safe due to their past experience and the presence of *110 security guards in the general area. They made no guarantees of safety beyond these remarks. They only filled the plane with gasoline and tied it down at the Coes’ request, without assuming dominion or control over it. We find that they did not accept it for safe keeping.
What then was the legal relationship between these parties? In St. Paul, supra, these remarks tend to lessen any inclination that there might be to determine that this was a lease of space to the Coes:
“However, a mere lease of parking space contemplates an entirely different arrangement. It usually involves long term parking, with its attendant continuous exposure of the vehicle to the danger of theft for lengthy periods, at modest rates not commensurable with the costs involved in extensive security precautions necessary to deter a sophisticated theft.”
In view of the Coes’ intention to stay overnight only and the fact that no “tie down” charge was made, we find that this was not a lease of space but that the plaintiffs were business invitees only. Our jurisprudence is firmly established to the effect that an invitee is a person who goes on the premises with the express or implied invitation of the occupant on the business of the latter or for their mutual advantage; and to him the duty owed is that of reasonable and ordinary care, which includes the prior discovery of reasonably discoverable conditions of the premises that may be unreasonably dangerous, and correction thereof or warning to the invitee of the danger. Foggin v. General Guaranty Insurance Co., 250 La. 347, 195 So.2d 636 (1967) and authorities cited therein. The record before us is devoid of any showing of a breach of that duty on the part of the defendant or any proof of negligence which might be attributable to them. The judgment of the district court is, therefore, affirmed, all costs of this appeal to be paid by the appellant.
Affirmed.