LOBRANO, Judge.
This appeal arises from a judgment in favor of Charles A. Cashio, plaintiff-appel-lee against Laurence Macaluso, defendant-appellant, for damages in the amount of $5,000.00 resulting from the theft of Ca-shio’s vehicle from the parking lot of the Amco Transmission Shop owned by Maca-luso.
FACTS ADDUCED AT TRIAL:
Charles A. Cashio and his son, Danny Cashio, testified as follows:
On August 22,1987, they drove into New Orleans from their home in Metairie to attend a New Orleans Saints preseason football game. As they exited Interstate 10 near Earhart Boulevard, they observed a sign attached to a telephone pole that read “Parking $3.00”. The sign was adjacent to the parking lot of an Amco Transmission Shop. Danny, who was driving his father’s 1981 Monte Carlo, drove onto the premises. They were met by a man wearing a dark blue Amco shirt who identified himself as an employee of the shop. They asked the man if they parked there would their car be towed away. The man assured them that his boss had given permission for cars to park on the premises, that his boss was at the game and that he was also going to the game. The Cashios parked and locked their car, paid the $3.00 fee and walked to the game.
Upon returning from the game, the Cashios discovered their car was not on the lot. Shortly thereafter, the “parking lot attendant” returned from the game. All three men attempted to find the vehicle but to no avail. Later that evening, the Cash-ios reported the vehicle stolen. The “parking lot attendant” was never identified. Neighbors who lived next door to the shop told the Cashios the “parking lot attendant” worked for the transmission shop because they had seen him on the premises. Two weeks later, the Monday after the next home game, the Cashios returned to the Amco shop. They asked the office manager if they could speak to the man who ran the lot “on every Sunday or every home Sunday game for the Saints.” The office manager informed them that the man had not yet come into work but was due to arrive later that morning. The Cashios waited for a short while then left.
Laurence Macaluso testified that he is the franchise owner of the Amco Transmission Shop located at 2100 Earhart Boulevard. He stated that on August 22, 1987 he was closed for business. He denied making the premises available for parking by the public attending Saints games, never charged a fee for parking, never gave anyone authority to allow parking on the premises and never attached a sign to the premises indicating that parking was allowed. He described the Amco uniforms as consisting of navy blue pants with a light blue shirt with an Amco logo over one pocket and the employees’ name over the other.
Cashio filed the instant suit against Ma-caluso seeking the value of his stolen car. The trial court awarded him $5,000.00. Macaluso appeals that judgment asserting the following assignments of error:
1) The trial court erred by finding that a compensated deposit, as opposed to a lease of space existed, requiring no proof of negligence on the part of the lessor;
2) The trial court erred by finding that the element of damages was proven by a preponderance of the evidence;
*767 3) It was manifest error for the trial court to conclude that plaintiff proved by a preponderance of the evidence that the unidentified “parking lot attendant” was an employee of Macaluso’s Amco shop acting in the course and scope of his employment.
Macaluso asserts that the evidence clearly shows that no compensated deposit existed, only a lease of space. He argues that, even assuming arguendo, that the individual who accepted the parking fee was his employee and that he had full knowledge of/and consented to public parking on his property, he is not liable absent proof that negligence attributable to him resulted in the theft of the vehicle.
In her reasons for judgment, the trial court plainly stated that she believed Cashio’s version of the facts. Respecting the great deference due the findings of the trier of fact we find no manifest error in the conclusion that Macaluso had knowledge of the parking activities on his lot and that the attendant was his employee. Our inquiry, however, does not end with that conclusion. The issue becomes, given those facts, was the legal relationship between Macaluso and Cashio that of compensated deposit or merely a “lease of space”. If the relationship is that of deposit, “a presumption is raised that the loss resulted from a lack of due care on the part of the depositary and the burden is on the depositary to exonerate itself from fault.” Sovereign Marine & Gen. Ins. v. APCOA Parking, 487 So.2d 631 (La.App. 4th Cir.1986), and the cases cited therein. If a lease relationship exists the plaintiff must prove that the lot owner did not maintain suitable facilities or was negligent in the conduct of his business. Id.
A deposit is an act by which a person receives the movable property of another, binding himself to preserve it and return it in kind. La.C.C. Arts. 2926, 2928. A voluntary deposit takes place by the mutual consent of the parties, and once accomplished, binds the depositary to use the same diligence in preserving the property that he uses in preserving his own. La. C.C. Arts. 2932, 2937. Consent to a deposit can be expressed or implied. It is implied when the owner has carried or sent the thing to the depositary, and the latter knowing that the thing had been sent, has not refused to receive it. La.C.C. Art. 2933. Our jurisprudence makes clear that the obligation of preserving the deposited property is to be vigorously enforced where a compensated depositary exists. La.C.C. Art. 2938(2); Coe Oil Service, Inc. v. Hair, 283 So.2d 734 (La.1973).
It has been recognized that the general rule is that parking lots are to be treated as compensated depositaries. St. Paul Fire & Marine Ins. Co. v. Zurich Insurance Co., 250 So.2d 451 (La.App. 4th Cir.1971). However, in St. Paul Fire & Marine Ins. Co., supra, this court recognized the lease of space exception to the general rule by relying on certain factors which militate against a finding of deposit. Those factors include the retention of the keys by the owner; the complete dominion by the patron over this vehicle; the unrestricted access to his vehicle; and the fact that the lot was unattended and that the patron was aware of same. However, in Gauthier v. Allright New Orleans, Inc. d/b/a Allright Auto Parks, 417 So.2d 375 (La.App. 4th Cir.), writ denied, 422 So.2d 156 (La.1982), even with those factors present this court held that the legal relationship between the parties was not changed from a deposit to a lease. In that case, the court reasoned that the receipt, received by the patron after he parked his car, was insufficient to create a contract of lease. The court specifically noted that in a footnote in Coe, supra, the Supreme Court disapproved the holding in St. Paul.
In response to the Gauthier decision, the legislature enacted R.S. 9:2783 as a “safe harbor” provision for the benefit of unattended parking lot operators. That statute provides:
“Notwithstanding any provision of law to the contrary, the leaving or parking of a vehicle by any person at a parking meter operated by any municipality or other political subdivision or at any privately owned unattended parking lot, when such parking lot has signs prominently displayed informing customers that the lot is unattended and when the owner retains the keys, shall not give rise to a *768 contract of deposit but only to one of hiring or letting out space, and neither the political subdivision nor the parking lot owner shall thereby incur the obligations or the responsibilities of a depositary for losses as a result of theft, vandalism, or property damage.”
Thus, compliance with R.S. 9:2783 provides the unattended parking lot owner with a method of assuring that a contract of deposit will not exist.
In Sovereign Marine, supra, this court made it clear that compliance with R.S. 9:2783 was not the exclusive means of establishing a lease relationship. In that case the plaintiff parked his vehicle in the shorterm airport parking lot owned by defendant. He entered the lot through a controlled device known as a “ticket spit-ter”. The plaintiff chose a parking slot, parked his car and retained the keys. He had unrestricted access to his car and the lot. Upon his return four days later, plaintiff discovered his vehicle was stolen. Although there was a sign posted at the entrance of the lot stating, in essence, that the lot owner was not responsible for loss or theft of the vehicle, R.S. 9:2783 was not applicable because the sign did not advise that the lot was unattended. However, this court still held that a lease relationship existed reasoning that all the factors enumerated in St. Paul were present, the lot was clearly unattended and the sign, even though not adequate under R.S. 9:2783, was sufficient to convey the intent of the lot owner to create a lease relationship. The court’s ultimate conclusion was “[t]he mutual intent of the parties can be inferred from the circumstances, taking into consideration the type of parking arrangement and any notice given to the patron by the lot owner purporting to limit his liability.” Sovereign Marine & Gen. Ins., supra at 634.
In the instant case, R.S. 9:2783 is not applicable. The only sign posted merely stated “parking $3.00”. Although Cashio parked his vehicle, retained the keys, had unrestricted access to the lot, and knew apparently the lot would be unattended, we do not consider these factors sufficient to indicate an intent by Macaluso to lease space rather than act as a depositary. Unlike the sign in Sovereign, there was absolutely no notice by Macaluso that he intended to limit his liability by merely leasing space. Once the owner (Cashio) has sent the thing (his vehicle) to the depositary (Macaluso) and the latter knows the thing has been sent, consent is implied. La.C.C. Art. 2933; Gauthier v. Allright New Orleans, Inc., supra. Absent any evidence of intent to the contrary, we must conclude that a contract of deposit existed placing the burden on Macaluso to exonerate himself from fault. He has not done this.
Macaluso argues that Cashio failed in proving the value of his stolen vehicle. The evidence consisted of Charles Cashio’s testimony that the vehicle was originally purchased as used in 1983 for the price of $6,100.00 to $6,200.00. He testified the vehicle looked brand new and that it had been repainted shortly before the theft. His son testified it was in “mint” condition.
The trial court awarded $5,000.00. We cannot say this is clearly wrong. The trial court has discretion when awarding damages and its reasonable evaluation of the evidence supporting same will not be disturbed on appeal absent clear error.
For the reasons assigned the judgment is affirmed.
AFFIRMED.