LE BLANC, Justice.
Plaintiff was the owner of a 1947 Plymouth Station Wagon automobile which he had parked with the defendant who operated a parking lot in the City of Shreveport, on the afternoon of November 22, 1947. The automobile was forcibly entered during the night by one of the defendant’s employees who drove it.away from the parking lot and while driving it on the streets of the city became involved in an accident in which it was damaged very substantially.
Plaintiff instituted this suit against the operator of the parking lot seeking to recover damages from him in the sum .of $4,616.88 which includes the price of a new station wagon, loss of earnings during the time he was deprived of the use of his car, expenses incurred by him in purchasing a new car of the same type, attorney’s fees and loss of'merchandise he carried in the damaged car which, he claims, was destroyed in the accident.
' In his petition plaintiff alleges that on November 22, 1947, he placed his car on the. parking lot, as a paying customer, in charge of one Curtis Truett Gentry, defendant’s employee in charge of the parking lot,who was acting in thé course and scope of his employment when he 'accepted it. That *215 without his knowledge or consent, the said Curtis Truett Gentry, on the same date, removed the automobile from the parking lot and drove it upon the streets of Shreveport and involved it in an accident in which it was demolished, thus giving rise to this action for damages against the defendant.
The defendant in' his answer admits the initial placing of the car on the parking lot and the theft by Gentry which however, it alleges, took place several hours after the closing of the lot and several hours after he had gone off duty. Further answering, defendant alleges that the car was driven on the parking lot at or about three o’clock in the afternoon and that he took due and proper care of it until about seven o’clock when plaintiff surrendered his claim check after paying the charges for the time he had parked it. That plaintiff knew that the lot closed at seven-thirty p. m.; that no provision was made for the care of automobiles after that hour inasmuch as the lot was not operated after that time, all of which was made evident to the public in every possible way.
He further alleges that plaintiff was specially so informed and required to surrender his claim check but he nevertheless advised the attendant that he would leave the car on the lot after locking it so that it could riot be disturbed. That in so leaving it he did so purely as a licensee aijd in no respect as a customer entitled to the same care of the automobile as during the parking hours. That the said Curtis Gentry went off duty at seven-thirty p. m., had no duties in connection with the parking lot thereafter until the following morning when the lot would open again. That he left the premises at seven-thirty and did not return until ten o’clock that night, forced the locked window of the car and stole it from the lot. That he was not at that moment acting within the course and scope of his employment and defendant is in no way responsible for his said action.
After trial in the lower court there was judgment in favor of defendant rejecting plaintiff’s demands. The latter obtained and is prosecuting this devolutive appeal.
The parties seem to agree with respect to that phase of the law in the case which relates to the obligation of a depositary as prescribed by Art. 2937 of the LSA-Civil Code which binds him “to use the same diligence in preserving the deposit that he uses in preserving his own property.” The disputed point of láw between them is whether or not the defendant’s employee, Gentry, was within the scope or course of his employment when he took the car and drove it from the parking lot.
There is hardly any dispute regarding the facts in the case and it is dependent on how they- are to be applied that defendant’s responsibility is to be determined.
The defendant Wyatt Jones is the owner and operator of the open parking lot which is located at Edwards and Milam Streets in Shreveport. There are two buildings on the premises, a service station on Edwards *217 Street and a parking lot office on Milam. These buildings are open during the hours of eight in the morning and sfeven-thirty in the evening when the parking lot is being operated. Notice of these hours is posted on large signs that are attached to the office and the claim checks which are given to the customers also contain that information.
Curtis Gentry had been working for the defendant as an attendant at the parking lot for approximately one year and his duties were to park cars and get them out when called for. He held the keys and had access to the office. How many more attendants were employed the record does not show but it does appear from Gentry’s testimony that he was not the one who received the plaintiff’s automobile on the day that it was parked on the lot.
It was sometime during the afternoon of November 22, 1947, that the plaintiff, accompanied by Mr. Jefferson W. Hightower, his employer, drove his station wagon into the lot and left it with Percy McCoy, one of the attendants, to be parked. McCoy did not collect the parking fee because he put the ticket on the car as is customary when the fee isn’t collected.
At about six-thirty that evening, plaintiff, knowing that he would be detained, returned to the parking lot as he wanted to see that his car was locked and he also wanted to pay the parking fee. Gentry attended him, and it is at this point that the only dispute arises in the testimony. Plaintiff and Gentry are in agreement that plaintiff had locked the car and that it had to be reopened for the purpose of obtaining the parking ticket which, because it had been raining, had been placed inside the car. Plaintiff paid the parking fee and then,.he says, he noticed that the glass door on the left side was rolled down about two or three inches, which he had not observed when he locked the car. He says he asked Gentry to roll it up but that he rolled it only part of the way and told him it was stuck. As it had then stopped raining, he told Gentry to leave it that way. Gentry’s testimony is that he was the one who observed the open space in the window and told plaintiff that he would close it, which he did. He then locked the door and they then checked all four doors to see that they were locked. Plaintiff did not return to the lot for his car until after ten o’clock that night. By that time it had been stolen and driven ,away by Gentry.
Gentry testified that he left the parking lot a few minutes after seven-thirty; that he carried the money and the keys from the cars he had left locked to Hodges storage place and left them there. He went to a cafe, drank coffee and from there went to his home, changed clothes and came back to town. He went back to the cafe to buy a morning paper .and then conceived the idea of going to the lot to take the car. He says that he gained entrance by prizing the “little window” [meaning no doubt the ventilator window] open with a screw *219 driver lie obtained from the office, and getting his hand through to unlatch the door. He got into the car and drove away. This, according to his testimony was at about ten o’clock.
Under these facts it is hardly reasonable to argue that the Gentry’s employer can be held responsible under the doctrine of respondeat superior. His contract of bailment with plaintiff terminated at seven-thirty in the evening and his obligation as depositary under Art. 2937 of the LSA-Civil Code ceased at that time. The employee, in the meantime, left the premises as his duties no longer required his presence, the parking lot having closed for business at that hour as per the notice conveyed to the customers who patronized it. It would seem that plaintiff himself realized this as he went to the lot an hour before, knowing that he would not take his car out until after the closing hour, paid the parking fee and took the precaution of locking his car h.imself. The action of the attendant later in the evening was his own independent action; the result, of his own deliberate and careful planning. It had no connection whatsoever with his employment and certainly cannot be said to have been within its scope and course. . .
But it is urged that he initiated his plan to steal the car when he was still on the job and purposely left one of the windows partly >open so that he could gain entrance to 'it. 'Aside' from the fact that the testimony isn’t conclusive as to'how he did open the door of the car we can’t see what difference that would make as far as the defendant’s liability is concerned. It is impossible to tell what was in his mind at the time it was observed that one of the glass windows of the car was open a bit and the idea-of plaintiff that it was then that the theft was planned arises out of mere suspicion. Surely that isn’t sufficient to involve the defendant in the act of his employee in committing the theft which did not take place until an hour and a half after the employee’s duties had terminated and he had left the employer’s premises.
In a last effort to pin liability on the defendant it is contended that he was negligent in engaging an untrustworthy employee inasmuch as it is shown that Gentry had a criminal record before he was employed by him and was on probation at the time he stole the automobile. Such negligence was not pleaded but counsel for plaintiff makes it an issue because, he says, evidence concerning it was adduced and admitted without objection. This, it is claimed, had the effect of enlarging the pleadings. The defendant testified that when Gentry applied for work as a parking lot attendant he learned from him that he had come out of the Navy about a year before and that within two weeks prior to his employing him he had worked at the Southern Sulphur & Acid Company‘in Shreveport where, on checking, he found that his work had been satisfactory and that his •father had been working there as foreman *221 for many years. Gentry told him that he wanted to change jobs because the sulphur fumes at the plant were damaging his health. Defendant did not investigate his criminal record but we know of no law which imposes such duty on an employer and neither do we know of any law under which an employer can be held responsible for the acts of an employee who turns out to be unfaithful, when he cannot otherwise be so held.
The judgment appealed from correctly rejected the plaintiff’s demands and dismissed his suit. For the reasons stated it is hereby affirmed at his costs.