283 So.2d 734 (1973)
COE OIL SERVICE, INC., Plaintiff-Appellant-Relator,
v.
J. D. HAIR et al., d/b/a Hair Flying Service, Defendants-Appellees-Respondents.
No. 53027.
Supreme Court of Louisiana.
September 24, 1973.
Rehearing Denied October 26, 1973.
*736 Walker P. Macmurdo, Percy, Macmurdo, Gray & Eaton, Baton Rouge, for plaintiff-appellant-relator.
C. Edgar Cloutier, Christovich & Kearney, New Orleans, for defendants-appellees-respondents.
TATE, Justice.
The plaintiff is Coe Oil Service, Inc. ("Coe") and the defendants are the individuals doing business as the Hair Flying Service ("Hair"). The plaintiff Coe's airplane was left overnight on the defendant Hair's premises. During the night, a person unknown wrecked it. Coe sues Hair for the damages thereby caused.
The essential issue is: Did Hair's act, by agreeing to let Coe park its plane overnight on its premises, constitute a deposit, La.Civ.C. Art. 2926, et seq.,[1] with Hair's consequent legal obligation to safeguard Coe's deposited property? Or was Coe, instead, merely a business invitee, to whom Hair owed only the duty of ordinary care? The burden of proving fault or, instead, of exoneration from fault causing the loss varies significantly according to the respective characterization.
The trial court held that the delivery of the plane constituted a deposit, but that Hair had exonerated itself from fault. The court of appeal affirmed the dismissal of Coe's suit, but on the different ground that Coe was merely a business invitee and had not borne its burden of proving that Hair's fault was the cause of the damage to its plane. 268 So.2d 107 (La.App. 1st Cir. 1972), certiorari granted 263 La. 895, 270 So.2d 121 (1972).
Facts
The Hair Flying Service leased certain facilities at the Baton Rouge airport. On the east side, it maintained offices, flight instruction service, and fueling and other minor service facilities. At this location also were "tie-down" facilities tie-down hooks fixed in the ground, to which unlocked cables could tie planes through eyes on their sides and back. (On the west side, Hair maintained its hangar and maintenance facilities.)
Coe's president and his wife were flying Coe's four-passenger plane to Houston from Kentucky when they were forced to land at the field due to bad weather. A Hair employee, whose duty it was to attract incoming private planes to its facilities for refueling and other services, waved the plane in to Hair's area.
Mr. Coe, the president, inquired about tie-down facilities, had the plane filled with gas, and (after ascertaining they could get a motel room for the night) taxied it to a tie-down spot on Hair's leased premises. The employee secured it there for the night.
Both Mr. Coe and his wife inquired about the safety of the plane and its contents, which included certain valuable Christmas presents they were bringing to *737 Houston. Both Hair's office employee and its line-man several times assured them that the plane and its contents would be "perfectly safe", "perfectly all right", if left there for the night. These assurances were based on the airport (not Hair) having a security guard on duty all night, on the airfield (not Hair's leased portion of it) being fenced, on Hair's practice of leaving the outside building lights on all night and thus somewhat illuminating the area, and on there being a state hangar close by with guards on nighttime duty.
Accepting these assurances, the Coes locked their valuables in the baggage compartment and locked the doors to the passenger compartment. Before leaving for the night, they offered the keys to the plane to Hair's office employee, but she had refused them as unnecessary. When he left for the motel, Mr. Coe had not paid for the gasoline; presumably he intended to do so next morning before taking off.
There was no discussion of a tie-down fee, normally about $1.50 to $2.00 for a plane of this size. None was in fact charged. Both Hair's employees and Mr. Coe indicated that, normally, no tie-down fee was charged for a plane which had fueled up as had Coe's. The profit made on the gasoline and the expectation that the plane-owner would be a repeat customer were considered adequate compensation for the overnight tie-down service.
During the night, the plane was somehow entered through the locked right front door and was started. It was taxied about three-to-four hundred yards down the field and wrecked in a ditch. There were no signs of a forced entry or that the motor had been started other than with a key. Under the evidence, the person who wrecked the plane and how he entered and started it are unknown.
Applicable Legal Principles
The essential issue is whether the act of Hair, in accepting Coe's airplane, constituted a deposit, a relationship established by the placing of a thing with another for safekeeping.
Civil Code Article 2926 provides: "A deposit, in general, is an act by which a person receives the property of another, binding himself to preserve it and return it in kind." The deposit is essentially gratuitous, although compensation may be given. Article 2929. Our jurisprudence treats a compensated depositary as one against whom the obligation of preserving the property is under Article 2938 rigorously enforced. United States Fidelity & Guaranty Co. v. Dixie Parking Service, 262 La. 45, 262 So.2d 365 (1972). See Notes, 25 Tul.L.Rev. 268 (1951) and 12 Tul.L.Rev. 458 (1938).
The deposit is perfected by the delivery of the thing deposited. Article 2930. The voluntary deposit takes place by the mutual consent of the depositor and the depositary. Article 2932. "Consent is implied when the owner has carried or sent the thing to the depositary, and the latter knowing that the thing had been sent, has not refused to receive it." Article 2933.
The depositary must use the same diligence in preserving the property that he uses for his own. Article 2937. He is not answerable for the accidental loss or for deterioration not effected by his act. Articles 2939, 2945. However, once the existence of the deposit is established and loss of or damage to the property while deposited, a presumption is raised that the loss resulted from lack of due care on the depositary's part, and the burden is then on the depositary to exonerate himself from fault. Brown & Blackwood v. Ricou-Brewster Building Co., 239 La. 1037, 121 So.2d 70 (1970); Alex W. Rothschild & Co. v. Lynch, 157 La. 849, 103 So. 188 (1925). (As earlier noted, the obligations of safekeeping are more rigorously enforced against a compensated depositary.)
Characterisation of the Present Relationship and Its Effect
In holding that there was no deposit, the court of appeal essentially noted doubt as *738 to the requisite "delivery" of the airplane to Hair for purposes of safekeeping. In this regard, the court felt there was no assertion of custody and control by the depositary, cf. St. Paul Fire & Marine Ins. Co. v. Zurich Insurance Co., 250 So.2d 451 (La.App.4th Cir.1971)[2], relying particularly upon the circumstances that Coe, the depositary, retained the keys to the airplane.
In holding there was no "delivery" for purposes of a deposit, the intermediate court was apparently persuaded by the authorities cited by Hair. They concern the lack of delivery in sale through failure to turn over the keys, Article 2478, McCloskey v. Central Bank of Alabama, 16 La.Ann. 284 (1861), or circumstances in which a deposit was conceded but terminated by the depositary relinquishing control of the keys to deposited automobiles, Morse v. Jones, 223 La. 212, 65 So.2d 317 (1953), Continental Ins. Co. v. Himbert, 37 So.2d 605 (La.App.Orl.1948). Such holdings are not apposite to the issue before us.
For a deposit, the delivery is made "when the owner has carried or sent the thing to the depositary, and the latter knowing that the thing had been sent, has not refused to receive it." Article 2933. The fact that the thing is locked when received does not essentially militate against the receipt of the thing being a deposit, see Article 2943 [3] for instance, a bank is a depositary, although the safety deposit box is locked, and an innkeeper may be a depositary, of locked valuables left with him for safekeeping.
However, for the delivery of the object to another to constitute a deposit, there must also be mutual intent, expressed or implied, Articles 2932, 2933, that by the act of accepting it the person who receives it has bound himself to safeguard it. Article 2926. See United States F. & G. Co. v. Dixie Parking Serv. Inc., 262 La. 45, 262 So.2d 365 (1972).
We find this other essential element to be present under the instant facts and that therefore the act of Hair in receiving the property bound it as a depositary.
We further find that Hair is a compensated depositary. The compensation for accepting deposit of a thing need not consist of a storage fee, but may, as here, consist of some other economic advantage received by the depositary as part of the consideration for accepting the deposit. Davis v. Poelman, 178 So.2d 306 (La.App.4th Cir.1965)[4]; Lumbermens Mutual Casualty Co. v. Wallace, 138 So.2d 247 (La.App.4th Cir.1962), certiorari denied. Therefore, Hair's obligation of safeguarding the property, as well as its burden of exonerating itself from fault causing the damage, must be rigorously enforced.
Hair has not met its burden. Essentially, it cites the fence, lights, and security guard as being adequate precautions for safekeeping of the stored plane and as showing it afforded due care. However, Hair produced no direct evidence to prove that the cause of the loss was other than its failure as depositary to safeguard the property. Therefore, it did not meet the burden imposed upon it as compensated depositary of proving that the loss did not result from its fault. United States Fidelity *739 & Guaranty Co. v. Allright Shreveport, Inc., 256 So.2d 479 (La.App.2d Cir.1972).
Damages
Coe has in the record before us proved the following allowable damages:

Cost of repairs to the plane ......... $2,669.95[5]
Cost of transportation to complete
trip and to come and pick up plane .... 285.62[6]
 ______________
 TOTAL $2,955.57

Decree
For the foregoing reasons, we reverse the judgments of the district and intermediate courts dismissing the plaintiff's suit; and it is now ordered, adjudged, and decreed that there be judgment in favor of the plaintiff, Coe Oil Service, Inc., and against the defendants, J. D. Hair and Buddy Hair, d/b/a Hair Flying Service, in the sum of Two Thousand Nine Hundred Fifty-five and 57/100 ($2,955.57) Dollars, together with legal interest at the rate of five per cent per annum (the legal interest at the time suit was filed) from date of judicial demand until paid. The defendants-appellees-respondents are cast with all costs of these proceedings.
Reversed and rendered.
SANDERS, C.J., dissents with written reasons.
SUMMERS, J., dissents and assigns reasons.
MARCUS, J., dissents and assigns reasons.
SANDERS, Chief Justice (dissenting).
I am of the opinion that it makes no difference whether Coe be considered a business invitee, as the Court of Appeal held, or as a depositor, as this Court holds. If Coe was a depositor, Hair has absolved himself of liability by showing that he was not at fault.
For the reasons assigned, I respectfully dissent.
MARCUS, Justice (dissenting).
I respectfully dissent. I do not find that the facts of this case warrant a conclusion that there was a deposit. I do not feel that Hair, by receiving the airplane in the manner in which it did bound itself to preserve it for safekeeping. Article 2926 Civil Code. There was no assertion of custody or control by the depositary. The keys to the airplane were retained by Coe. I agree with the Court of Appeal that Coe was merely a business invitee, and no showing was made of a breach of any duty on the part of Hair or any proof of negligence which might be attributable to it.
SUMMERS, Justice (dissenting).
I do not agree that a deposit took place here. The Civil Code declares that a deposit, in general, is an act by which a person "receives" the property of another, La.Civil Code art. 2926, and that a "deposit is perfected only by the delivery, real or fictitious, of the thing deposited." La. Civil Code art. 2930. I find no "delivery" under the facts of this case. The symbol of delivery, the key to the aircraft, which the Coes retained, was never surrendered to Hair Flying Service. Instead Hair's employee refused it, and the aircraft was locked so that Hair could exercise no control over it.
Delivery is defined as the transfer of ". . . the thing . . . into the power of possession . . ." of another. La.Civil Code art. 2477. Delivery of movable effects takes place either by their real tradition, or "by the delivery of the keys . . ." La.Civil Code art. 2478. Although these latter two articles apply specifically to sales, the common sense of their meaning can readily be applied to the "delivery" required for a deposit; the principles are the same. E. g. Morse v. *740 Jones, 223 La. 212, 65 So.2d 317 (1953); McCloskey v. Central Bank of Alabama, 16 La.Ann. 284 (1861); and St. Paul Fire and Marine Ins. Co. v. Zurich Insurance Co., 250 So.2d 451 (La.App.1971).
The element of mutual consent to the deposit between the depositor and depositary is also lacking in this case. La.Civil Code art. 2932. If Hair's employees refused to accept the keys, and the Coes locked the aircraft and retained the keys, it cannot be said that Hair consented to a deposit relationship.
At the most, in my opinion, the Coes were business invitees to whom Hair owed reasonable and ordinary care not to damage their property. La.Civil Code art. 2315. Nothing in the record indicates even remotely that Hair was negligent in bringing about the wreckage of the aircraft.
I find it hard to reconcile with the legal principles cited that this courtesy and accommodation on the part of Hair results in his liability for damage resulting from a wreck he had nothing to do with.
I respectfully dissent.
NOTES
[1] The deposit of the civil law and its depositor-depositary relationship is generically similar to the bailment of the common law and its bailor-bailee relationship. See Planiol, Civil Law Treatise, Volume 2, Sections 2204-25, (LSLI translation, 1959); 8 C.J.S. Bailments; 8 Am.Jur.2d "Bailment". Both import the delivery of movable (personal) property by the depositor-bailor to the depositary-bailee to be preserved and returned when the purpose of the deposit-bailment has been served.
[2] Under the facts of the cited decision, a locked automobile had been left on a "long term" parking lot. Incorrectly characterizing the relationship as a lease of space rather than the deposit of property for safekeeping, the court relied upon the car owner's retention of the keys as one of the indicia of an absence of the intention to enter into a deposit relationship.
[3] Of course, the failure to deliver the keys may sometimes be indicia of lack of intent for a deposit, see Footnote 2.
[4] Certiorari was granted on the application of the plaintiffs-depositors, 248 La. 448, 179 So.2d 432 (1965), on a question of insurance policy coverage for the damages allowed against the depositary. The proceedings were then stayed before this court because the insurer was in receivership.
[5] Coe actually paid Hair a total of $2,847.-42 for repairs and other services. However, this included a substantial annual inspection fee and sums for gas and oil. In the absence of other showing, these expenses are not shown to have been related to the damage to the plane  i. e., they would have been incurred had the plane been damaged or not.
[6] These are: P-3, $49.36; P-4, $12.05; P-5, $113.40; P-6, $84.53; P-7, $26.28; total: $285.62.