360 So.2d 1363 (1978)
Byron GRABERT, Wiltz Segura and Pat Hebert, Plaintiffs-Appellants,
v.
JAMES C. NOEL FLYING SERVICE, INC., et al., Defendants-Appellees.
No. 6537.
Court of Appeal of Louisiana, Third Circuit.
June 28, 1978.
Rehearing Denied August 15, 1978.
*1365 Cooper & Sonnier, John E. Ortego, Abbeville, for plaintiffs-appellants.
Onebane, Donohoe, Bernard, Torian, Diaz, McNamara & Abell by Dennis L. Doise, Lafayette, for defendants-appellees.
Before DOMENGEAUX, WATSON and GUIDRY, JJ.
GUIDRY, Judge.
In this suit, plaintiffs seek to recover a money judgment against the James Noel *1366 Flying Service, Inc. (hereafter referred to as Noel) and its insurer, Ranger Insurance Company, for damages incurred when plaintiffs' airplane was stolen and wrecked by one of Noel's part-time employees. Noel is the fixed base operator that undertook to store and service plaintiffs' airplane at its hangar facilities located at the Abbeville Municipal Airport. Plaintiffs, in their petition, allege negligence on the part of Noel in failing to safeguard the aircraft and further that Noel breached its duty owed to plaintiffs as a compensated depositary. Defendants filed answers denying liability and alleging contributory negligence and/or assumption of risk on the part of plaintiffs.
After trial on the merits, the trial court found that a "compensated depositary" relationship existed between the parties. The court, after concluding that defendants were not guilty of any acts of negligence, rendered judgment in favor of defendants, ordering plaintiffs' suit dismissed with prejudice. Plaintiffs have appealed. Defendants have answered the appeal praying that the trial court judgment be modified to delete any finding of a depositary relationship between plaintiffs and defendants.
The principal issues presented on this appear are:
(1) Was Noel a "compensated depositary"; and if so,
(2) Did Noel exonerate itself from fault for the loss of the aircraft?
Plaintiffs are owners in indivision of a 1961 Cessna 175A aircraft. Pursuant to a verbal agreement with Noel, this particular aircraft had been stored for approximately one year at Noel's facility located at the Abbeville Municipal Airport. Noel is engaged in the business of providing storage, fuel and various other services for aircraft. The particular arrangement between these parties provided for the storage of plaintiffs' aircraft in Noel's hangar, and for certain related services including the checking of fuel and oil, minor cleaning and moving the aircraft in and out of the hangar when requested to do so by plaintiffs. Plaintiffs' aircraft was not allotted any particular space in the hangar. Noel received the sum of $30.00 per month from plaintiffs for the hangar space. Plaintiffs were also charged for whatever fuel and oil were consumed by their aircraft.
At the time of the theft of plaintiffs' airplane, there were between eight and twelve aircraft stored in the Noel hangar. Several of these aircraft were of the type that could be started without the use of a key. No additional security provisions were made for these aircraft, all of the aircraft being simply stored together in the hangar. One of the aircraft stored in the hanger was a small training airplane that belonged to Noel. This particular airplane required a key to start it. While Noel's airplane was thus stored, the key was attached to a clipboard and was kept in the office under lock and key along with the aircraft's log book.
Plaintiffs' Cessna aircraft also required a key in order to be started. The record indicates that there was only one key for this aircraft. As a matter of convenience, it was the practice of plaintiffs to leave this key in the aircraft when it was not in use. The key was left either in the ignition switch or hanging on a knob on the instrument panel. Plaintiffs also used this practice with regard to two other aircraft owned by them and stored in the same hangar.
The record indicates that there had never been any discussion between the parties concerning plaintiffs' leaving the keys in the aircraft while it was not in use. Plaintiffs were never asked to discontinue this practice nor was this procedure encouraged by Noel. This was something left up to the individual owners or pilots. Noel's employees did not check the aircraft before leaving each day to see if the keys were left in them. There were no signs anywhere on the premises advising that Noel would not be responsible for theft or damage to the airplane. The parties had never discussed which of them would be responsible if an aircraft was stolen.
*1367 Normal business hours for the Noel facility were from 7:00 A.M. until around dusk. During these daylight hours, Noel employees were on duty to perform whatever services were necessary including moving the planes in and out of the hangar. However, at dusk, the office and hangar were locked and the Noel employees left for the day. The only security measures then in effect were the fact that the hangar door was locked and that the ramp area was well lighted. There is some evidence that either a sheriff's deputy or city police officer made a round there at night on his patrol. Noel provided no guards. Plaintiffs were fully aware of the situation which existed at the facility after the employees left for the day.
As a matter of convenience and to provide the aircraft owners with the necessary 24 hour access to their airplanes, it was the practice of Noel to leave a key to the hangar door on top of an electric meter box located three or four feet from the hangar door. The existence and location of this key was known to all of the aircraft owners that were based there (including plaintiffs) as well as all of Noel's employees. An owner, who desired access to his aircraft either before or after normal business hours would utilize this key to enter the hangar. He would move the aircraft himself if necessary and would replace this key in its original position upon leaving. This procedure had been adopted soon after the hangar was constructed in 1968 and had been continued without complaint from any of the aircraft owners including plaintiffs who often used this very method to gain access to their aircraft. The location of the key had never been changed since this procedure was started.
On December 31, 1974, plaintiffs' Cessna aircraft was stolen from the Noel hangar facility by one Richard Cameron, a part-time employee of Noel. Cameron was not on duty at the time he took the aircraft. Cameron, who was not a licensed pilot, was fatally injured when the aircraft crashed at approximately 10:50 P.M. The wreckage of the aircraft was discovered about one and one-half miles southwest of the airport. It is not disputed that the aircraft was totally destroyed. Cameron had worked for Noel on Sundays for approximately three months prior to this incident. As an employee, Cameron had been issued keys to both the office and the hangar. He also knew about the key that was kept on top of the electric meter box. A key to the hangar was also kept in the office.
There is no specific evidence in the record establishing exactly how Richard Cameron entered the hangar at the time of the theft. The record does not reflect any evidence of forced entry. It can reasonably be assumed that Cameron used one of the keys available to him to gain access to plaintiffs' aircraft.
A deposit is defined as an act by which a person receives the property of another, binding himself to preserve and return it to its owner. LSA-C.C. art. 2926. The deposit is perfected by the delivery of the object, LSA-C.C. art. 2930, and requires the mutual consent of the person making the deposit and the person receiving it. LSA-C.C. art. 2932.
The requisite consent is implied when the owner delivers the object to the depositary who, having knowledge of the delivery, has not refused to receive it. LSA-C.C. art. 2933.
Appellees argue that since plaintiffs were allowed almost unlimited access to the aircraft, and were allowed to move and secure it as they wished, Noel never had custody of the aircraft. In support of this contention, appellees cite the case of Foremost Insurance Company v. Blue Streak Enterprises, Inc., 353 So.2d 430 (La.App. 4th Cir. 1977). The cited case involved a situation where a boat owner paid a monthly fee for the use of a boat slip in a marina. The board was stolen and the owner's subrogee brought suit against the marina operator. The court characterized the relationship as one of lessor and lessee, finding an absence of delivery of the boat to the marina operator.
*1368 We find the cited case inapposite. Although the details of the arrangement between the boat owner and marina operator are not set forth in Foremost, supra, the opinion indicates that the boat owner simple leased a specific designated area in the marina for the privilege of mooring his boat. However, in the instant case, the record clearly reveals that plaintiffs were not allocated any particular space in the hangar for their aircraft. The evidence further supports a conclusion that Noel did exercise a considerable degree of control over plaintiffs' aircraft. The airplane was moved (usually with a tow bar) by Noel personnel whenever plaintiffs requested that it be brought from the hangar in anticipation of a flight. Presumably, the exact place in the hangar which was occupied by the plaintiffs' airplane varied according to the number and size of aircraft stored therein at any given time. Noel personnel obviously enjoyed authority to move plaintiffs' aircraft around to facilitate the moving of other aircraft in and out of the hangar.
The evidence, taken as a whole, convinces us that the trial court properly determined that Noel was a compensated depositary. Segura v. United States Aircraft Insurance Group, 246 S.2d 880 (La.App. 3rd Cir. 1970, writ refused); Coe Oil Service v. Hair, 283 So.2d 734 (La.1973).
Noel's obligations as a depositary are set forth in LSA-C.C. articles 1908, 2937 and 2938 which state as follows:
"Art. 1908. The obligation of carefully keeping the thing, whether the object of the contract be solely the utility of one of the parties, or whether its object be their common utility, subjects the person who has the thing in his keeping to take all the care of it that could be expected from a prudent administrator.
This obligation is more or less extended with regard to certain contracts, the effects of which, in this respect, are explained under their respective titles.
Art. 2937. The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property.
Art. 2938. The provision in the preceding article is to be rigorously enforced:
1. Where the deposit has been made by the request of the depositary.
2. If it has been agreed that he shall have a reward for preserving the deposit.
3. If the deposit was made solely for his advantage.
4. If it has been expressly agreed that the depositary should be answerable for all neglects."
The trial judge, in written reasons, found that Noel was not guilty of any act of negligence in leaving the key on the outside meter box since the employee who stole the aircraft had access to other hangar keys by virtue of his employment. The trial judge concluded that Noel had not been guilty of negligence in hiring this particular employee, and that the employee's action could not have been reasonably foreseen, particularly in view of the fact that he did not know how to fly an airplane.
With respect to the keys which were left in plaintiffs' aircraft, the trial judge found that this practice was utilized primarily for the convenience of the plaintiffs and that Noel was not negligent in failing to secure the keys at night. The trial judge determined that the practice of Noel of placing the keys to its own aircraft in a safer place at night was not a safety precaution, but rather a check on airplane use and rental by keeping the keys with the aircraft log book.
Appellants contend that the trial court treated this case as a negligence case, instead of presuming negligence on the part of Noel and requiring Noel to exonerate itself from liability. It is unclear whether the trial judge decided this case on the basis of a tort action requiring plaintiffs to establish negligence on the part of defendants rather than under the law of deposit which presumes fault on the part of the depositary *1369 and places the burden on him to exonerate himself from negligence. However, in any event, it is clear that the trial judge erred in failing to apply the proper law to the facts as found.
It is well settled in our jurisprudence that once the existence of a depositary relationship is established, as well as loss or damage to the property deposited, a presumption arises that the loss resulted from the depositary's lack of due care, negligence or fault and the burden is then placed on the depositary to exonerate himself from such negligence or fault. Coe Oil Service Inc. v. Hair, supra; Insured Lloyds v. Liberty Mutual Insurance Co., 295 So.2d 206 (La.App. 3rd Cir. 1974); Soileau v. Ville Platte Rice Dryer, Inc., 322 So.2d 404 (La. App. 3rd Cir. 1975).
As a compensated depositary, Noel's obligation of safeguarding plaintiffs' property as well as its burden of exonerating itself from fault must be rigorously enforced. LSA-C.C. art. 2938; Coe Oil Service v. Hair, supra.
Although the depositary is not an insurer of the deposit, Travelers Insurance Co. v. Coleman E. Adler, Inc., 285 So.2d 381 (La.App. 4th Cir. 1973); Segura v. United States Aircraft Insurance Group, supra; Soileau v. Ville Platte Rice Dryer, Inc., supra, the depositary owes a duty to exercise reasonable care and to take precautions against reasonably foreseeable damages to the deposit. Segura v. United States Aircraft Insurance Group, supra. We are of the opinion that theft of an airplane from a place of storage is a reasonably foreseeable occurrence against which a depositary should take adequate and reasonable precautions.
Thus, we must now determine whether Noel has met its heavy burden of exonerating itself from fault for the theft of the aircraft.
In seeking to exonerate itself from liability to plaintiffs for the loss of the aircraft, appellees contend that Noel was not guilty of any negligence in the hiring of Richard Cameron and therefore is not responsible for Cameron's actions in stealing plaintiffs' aircraft. Lou-Con, Inc. v. Gulf Building Services, Inc., 287 So.2d 192 (La.App. 4th Cir. 1973, writ refused). Noel also contends that plaintiffs were fully aware of the circumstances under which the aircraft was stored, therefore Noel fulfilled all of its obligations under any contract of deposit with plaintiffs. Noel further alleges that plaintiffs were contributorily negligent and/or assumed the risk of the loss in that they knowingly and voluntarily left the aircraft unlocked with the key inside despite their knowledge of the fact that the hangar was unattended and unguarded after dusk each day. Finally, Noel argues that any contract of deposit existing between the parties terminated at the end of each day when Noel's employees left the key to the hangar door where it would be available to the aircraft owners. Noel contends that this amounted to a "constructive re-delivery" of the aircraft to plaintiffs. Continental Insurance Company v. Himbert, 37 So.2d 605 (La.App.Orl.1948).
We find no merit in any of the above contentions and ultimately conclude that plaintiffs are entitled to judgment because of Noel's failure to exonerate itself from fault in the theft of plaintiffs' plane.
Although the record does not reflect any negligence on the part of Noel in either the hiring or supervision of Cameron, we do not consider this fact sufficient to exonerate Noel from liability. The duty owed by a depositary is more onerous than the duty owed under LSA-C.C. art. 2315 which is simply to exercise reasonable care to refrain from harming others. Segura v. United States Aircraft Insurance Group, supra.
The fact that plaintiffs left the ignition key in their unlocked aircraft with full knowledge that the hangar would be unguarded after dark and that a key to the *1370 hangar was readily accessible to a number of people does not relieve Noel of its obligations as a depositary.
While contracts of deposit may be altered by special agreement so as to enlarge or restrict the depositary's responsibility for loss or damage to the deposit; Norwegian Government Seamen's Service v. Himbert, 228 So.2d 757 (La.App. 4th Cir. 1969); Soileau v. Ville Platte Rice Dryer, Inc., supra, actual notice of such modifications must be communicated to and accepted by the depositor. Guillot v. Kaplan Farmers Co-op, Inc., 352 So.2d 402 (La.App. 3rd Cir. 1977). In the instant case, Noel did not attempt to contractually limit its responsibility to theft or other loss occurring during specified hours or only to aircraft that were locked or otherwise secured. Having accepted the deposit without limiting its responsibility, Noel cannot now assert that it is free from fault as a compensated depositary because plaintiffs were also aware of certain conditions surrounding the storage of the aircraft. A depositary's Codal obligation to preserve the object of the deposit cannot be restricted by implication.
Noel is required to use the same diligence in preserving the deposit as he uses in preserving his own property. LSA-C.C. art. 2937; Segura v. United States Aircraft Insurance Group, supra. The record reflects that Noel had established the practice of securing the keys to its aircraft by locking same in the office every night. While there is some evidence that this was done for record-keeping rather than security purposes, this practice nevertheless established a standard of care with respect to aircraft owned by Noel. Leatherman v. Miller's Mutual Fire Insurance Company of Texas, 297 So.2d 540 (La.App. 3rd Cir. 1974).
The added danger of theft of an unattended, unlocked aircraft with the keys left in it requires an depositary to exercise an even greater degree of care with respect to the deposit. See Kaiser v. Poche, 194 So. 464 (La.App.Orl.1940); Neely v. Tamburello, 187 So.2d 526 (La.App. 4th Cir. 1966).
It is our conclusion that Noel has not met its burden of exonerating itself from negligence or fault for the loss of plaintiffs' aircraft. Noel produced no direct evidence to prove that the cause of the loss was other than its failure as a depositary to safeguard the property. Coe Oil Service, Inc. v. Hair, supra.
The only remaining issue concerns the amount of damages to which plaintiffs are entitled. In their petition, plaintiffs sought recovery of the value of the aircraft along with damages for inconvenience occasioned by the loss of use of the aircraft. There is evidence in the record to support an award of $6,800.00 for the value of the aircraft. The record reflects that at the time of the loss, a sale of this particular aircraft was then pending, and that plaintiffs had no plans to fly the aircraft again while they still owned it. Under these circumstances, we will not allow any award for loss of use or inconvenience.
For the above and foregoing reasons, the judgment of the district court ordering plaintiffs' suit dismissed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment in favor of plaintiffs, Byron Grabert, Wiltz Segura and Pat Hebert and against defendants, James Noel Flying Service, Inc. and Ranger Insurance Company in the amount of $6,800.00 with legal interest from date of judicial demand until paid. Defendants are cast for all costs, both at the trial level and on appeal.
REVERSED AND RENDERED.