391 So.2d 1170 (1980)
Jimmy HARPER
v.
BROWN & ROOT, INC., et al.
No. 80-C-1479.
Supreme Court of Louisiana.
December 15, 1980.
*1171 Kramer & Laird, James M. Buck, Alexandria, for plaintiff-applicant.
Trimble, Randow, Smith & Wilson, Lon P. Wilson, Gist, Methvin, Hughes & Munsterman, John W. Munsterman, Provosty, Sadler & deLaunay, Alvin A. Provosty, III, Alexandria, for defendants-respondents.
LEMMON, Justice.
Plaintiff, a mechanic employed by Brown & Root, Inc., filed this suit against his employer to recover the damages he sustained when his tools were stolen after working hours. The trial court denied recovery, and the court of appeal affirmed. 383 So.2d *1172 1079. We granted plaintiff's application for certiorari to review these rulings which held that no relationship of depositor-depositary had been established between the parties. 389 So.2d 1129.
Brown & Root contracted with Central Louisiana Electric Company (CLECO) to construct a power plant on CLECO's property, which already contained an existing power plant and attendant offices. The construction area for the power plant bordered on a lake and was separated by a fence from the remaining property. Within this fenced area Brown & Root conducted its construction operations and stored machines and materials. Access to the construction area was through gates controlled by security guards (provided by CLECO), who were on duty around the clock seven days a week. Parking was provided for employees' cars in a lot near the gates, and employees were not allowed to bring cars into the construction area.
As a condition of plaintiff's employment he was required to furnish his own tools on the job site. His employment duties required numerous tools which filled two chests, weighing a total of about 175 pounds. Regular working hours were 7:00 a. m. to 5:00 p. m., Monday through Saturday. During working hours the tools were transported around the construction area on a company truck, which was parked near the guard shack after working hours. Employees could remove their tools from the construction area at the end of the day (if they obtained a permit), or could leave their tools within the fenced area. However, the number of gang boxes and sheds for storage was limited, and the mechanics in fact left their tools on the company truck. After working hours all Brown & Root employees left the construction area, and the gates were locked until the next day of work.
When plaintiff began his employment, he asked Jack Bigger, Brown & Root's foreman, about storing his valuable tools or taking them home, and Bigger told him to keep the tools on the truck until construction of a shop was completed.[1] Bigger pointed out there were guards on duty 24 hours a day.
When plaintiff reported to work on the morning of Monday, August 1, 1978, all of his tools were missing. The tools of the other mechanics, however, were on the truck. This suit followed Brown & Root's rejection of plaintiff's claim for the value of his tools.
Deposit is an act by which a person receives movable property from another and binds himself, expressly or implicitly, to preserve the property and to return it in kind. C.C. art. 2926; M. Rubin, Bailment and Deposit in Louisiana, 35 La.L.Rev. 825 (1975). The principal requisites for the formation of a depositor-depositary relationship are the mutual consent of the parties and the delivery of the property. C.C. art. 2930 and 2932. If the depositor surrenders possession and control in some degree, although not completely, this may be sufficient delivery to establish the relationship, when the parties have otherwise demonstrated their consent and intent to form such a relationship.[2]Coe Oil Service, Inc. v. Hair, 283 So.2d 734 (La.1973).[3]
In the present case the consent of the parties to a deposit is implicit from the facts and circumstances. The employer required the employee to furnish (deliver) a large quantity of tools, and the employer received delivery of these tools and transported them around the construction site on the employer's truck during working hours. The employee removed a tool from the *1173 truck only as needed to perform employment duties and returned the tools to the truck when he completed the work in which the tool was needed. At the end of the working day neither party realistically expected that the employee was to reassume complete possession and control of the 175 pounds of tools, when the employee could not bring a car into the construction area and needed a special security clearance pass from defendant in order to take any items out. Moreover, both parties relied on the fact that CLECO provided security guards as eliminating the need for the employee to regain complete possession and control of the tools each evening and take them home.
Under these circumstances the employee as a practical matter was virtually required to leave his tools at the construction site and cannot reasonably be viewed as having done so for his own convenience as a matter of choice.[4] We hold that when the employee initially furnished the tools on the job site, the parties implicitly intended that the employer would preserve the tools and return them to the employee, partially during each working day and completely at the termination of his employment. The fact that both parties exercised some degree of possession and control each day does not necessarily exclude a finding of receipt and delivery necessary to constitute a deposit, when the parties by their words and action clearly intended the creation of this relationship.[5]
Once the depositor establishes the existence of a deposit and the loss of the property while deposited, it is presumed that the loss resulted from the depositary's lack of care, and the depositary has the burden to exonerate himself from fault. Brown & Blackwood v. Ricou-Brewster Building Co., 239 La. 1037, 121 So.2d 70 (1960).
Defendant did not meet its burden of proving the loss did not result from its fault, and plaintiff is entitled to recover his damages resulting from the loss. The matter will be remanded to the court of appeal for the determination of the quantum of damages.

DECREE
The judgment of the court of appeal is reversed, and the matter is remanded to the court of appeal for determination of the amount of damages. The costs in all courts, attributable to the plaintiff's demand, are assessed against defendant.
BLANCHE, MARCUS and DENNIS, JJ., dissent and assign reasons.
BLANCHE, Justice (dissenting).
I respectfully dissent. The court of appeal opinion is correct. "The very basic essentials for the formation of a contract of deposit, i. e., delivery and receipt, are lacking." 383 So.2d 1079, 1082 (3rd Cir. 1980).
MARCUS, Justice (dissenting).
I agree with the courts below that no deposit relationship existed between plaintiff and Brown & Root. The very basic essentials for the formation of a contract of deposit, that is, delivery and receipt, were lacking. Accordingly, I respectfully dissent.
DENNIS, Justice, dissenting.
I respectfully dissent from the majority's holding that a contract of deposit existed between the plaintiff and his employer. The trial court found that no depositor-depositary relationship was presented under the facts in this case. I agree with the *1174 court of appeal that this finding is not manifestly erroneous. The majority, applying the same legal principles as both lower courts, has reinterpreted the facts to reach a different, and in my opinion, unjustified result. The fact that both parties expected the plaintiff's tools to be left at the construction site, or even that both considered such practice safe, is insufficient to support a finding that the defendant-employer implicitly consented to become a depositary and "received" the tools in that capacity.
Secondly, since the majority saw fit to reverse the lower courts' decisions that the defendant was not a depositary, it was incumbent upon the majority to outline the duty of the depositary and how that duty was breached. The majority does not adequately categorize the defendant as a compensated depositary upon which the duty to preserve is rigorously enforced. La.C.C. art. 2938. A depositary is only required to use the same diligence in preserving the deposit that he uses in preserving his own property. La.C.C. art. 2937. Although a presumption is available to the plaintiff that the loss resulted from the depositary's failure to act as a prudent administrator, this presumption is not irrebuttable. E. g., La.C.C. art. 2939; Sonnier Oldsmobile Inc. v. Southeastern Fidelity Ins. Co., 377 So.2d 572 (La.App. 3d Cir. 1979). And in no sense is the depositary properly considered an insurer. See, Zurich Ins. Co. v. Daigle Pontiac-Buick, Inc., 292 So.2d 282 (La.App. 1st Cir. 1974); Travelers Ins. Co. v. Coleman E. Adler, Inc., 285 So.2d 381 (La.App. 4th Cir. 1973); Segura v. United States Aircraft Ins. Group, 246 So.2d 880 (La.App. 3d Cir. 1971).
NOTES
[1] At the time of trial there were storage buildings in which tools were kept on the site.
[2] The decision of the intermediate court turned on a finding that there was no delivery and receipt since plaintiff maintained possession and control.
[3] In the Coe Oil case the depositor purchased fuel from the depositary and left his locked airplane overnight in a tie-down spot on the depositary's leased premises. This court held that the fact the airplane was locked does not militate against a finding of delivery and receipt of the deposit, when the essential element of mutual intent is present.
[4] The finding of a deposit is generally inappropriate in an employer-employee relationship. However, when an employer requires employment conditions which actually constitute a deposit, the existence of the employer-employee relationship does not exclude the finding of a deposit.
[5] Although defendant may not have intended to assume the obligations imposed by law on a depositary, it is the intent to establish the relationship that is determinative. A lessor, for example, may not intend to assume every obligation attendant to that relationship, but the law imposes the obligations when the parties by their words and actions enter into a lease.