BOWES, Judge.
Defendant has appealed a judgment against him, as depositary of plaintiff’s tools, in the amount of $2,596.24, the value of the tools themselves. Plaintiff answered the appeal, averring that he is entitled to damages for loss of income as a result of the loss of the tools. We affirm the trial court’s judgment.
Plaintiff, Herbert Tauzier, was employed by defendant, Giambelluca Construction Company, as a mechanic. He had been *1354 employed there for several years. The employees provided their own tools; Giambel-luca supplied them with trucks with locked compartments in which the tools could be kept. Plaintiff kept his tools, in his tool box, on the truck assigned to him. The tools weighed over a thousand pounds.
Sometime in June, 1982, the truck plaintiff usually drove was wrecked and a new truck assigned to him. Plaintiff testified that the new truck had doors on one side which did not lock properly. As a consequence, he had begun to store his tools, overnight, in the body shop where he did most of his work. On the morning of July 15, 1982, Mr. Tauzier arrived at the shop to discover that one of his tool boxes was missing. It was never found, and has been presumed to have been stolen.
Plaintiff testified that shortly after the incident he was “laid off” by defendant. Although he was employed elsewhere, he claimed to have suffered diminished income, because he earned less per week at his job than he earned in employment with the defendant.
It was company policy that all mechanics were responsible for their own tools. Mr. Giambelluca, the company president, testified that he was unaware that plaintiff kept his tools in the shop, but he did know that other mechanics left their tools at the shop “at their own risk.” He also testified that he (or more properly, the company), took no precautions to protect the tools from being stolen.
Cotton Olinde, shop foreman supervisor, testified that he knew plaintiffs tools were kept in the shop. Other mechanics left their tools there also. Olinde thought that Giambelluca was probably aware that the tools were kept there. The trial judge concluded that Giambelluca had such knowledge. We cannot say he was clearly wrong in this respect.
Based on the above facts, we have no hesitation in agreeing with the trial judge that a depositor-depositary relationship existed. A deposit, in general, is an act by which a person receives the property of another, binding himself to preserve it and return it in kind. C.C. Art. 2926. The deposit is perfected by delivery of the thing. C.C. Art. 2930. Voluntary deposit takes place by the mutual consent of the depositor and the depositary. Art. 2932. Consent is implied when the owner has carried or sent the thing to the depositary, and the latter, knowing the thing has been sent, has not refused to receive it. Art. 2933.
The depositary must use the same diligence in preserving the property that he uses for his own. Article 2937. He is not answerable for the accidental loss or for deterioration not effected by his act. Articles 2939, 2945. However, once the existence of the deposit is established and loss of or damage to the property while deposited, a presumption is raised that the loss resulted from lack of due care on the depositary’s part, and the burden is then on the depositary to exonerate himself from fault. Coe Oil Service, Inc. v. Hair, 283 So.2d 734 (La.1973) (citation omitted)
In Mercer v. Columbia Equipment Co., Inc., 409 So.2d 1285 (La.App. 2nd Cir. 1982), the employee was required to furnish his own tools at the job site and it was impractical for him to take the tools home after work was over. The employer knew the tools were left on the premises. The tools were stolen. In Mercer, the trial court had no problem in deciding that the depositor-depositary relationship was present. We find the facts of that case to be all but indistinguishable from the present matter. We believe, as did the Second Circuit, that there was at least im-' plied consent to the deposit by the requirement that the employee use his own tools at the defendant’s work premises. The impracticability of removing the tools each day after working hours required their “delivery” to the employer for safekeeping. Giambelluca was a depositary of Tauzier’s tools.
Further, we find that Giambelluca was a compensated depositary. Our jurisprudence treats a compensated depositary *1355 as one against whom the obligation of preserving the property under Article 2938 is rigorously enforced. United States Fidelity and Guaranty Co. v. Dixie Parking Serv., Inc., 262 So.2d 365 (La.1972).
The compensation for accepting deposit of a thing need not consist of a storage fee, but may, as here, consist of some other economic advantage received by the depositary as part of the consideration for accepting the deposit. Coe, supra (citation omitted)
We find, as did the trial court, that defendant derived an economic advantage by having tools on the premises because plaintiff could work more efficiently. The economic benefit of this to defendant is obvious. Therefore, as a compensated depositary, the obligation of Giambelluca of safeguarding the property, as well as its burden of exonerating itself from fault causing the damage, must be rigorously enforced. See Coe.
Defendant did not meet the burden of proof imposed by C.C. Arts. 2937 and 2938,[1] and emphasized in Coe. Once the depositor establishes the existence of a deposit and the loss of the property while deposited, it is presumed that the loss resulted from the depositary’s lack of care, and the depositary has the burden to exonerate himself from fault. Coe; and Harper v. Brown & Root, Inc., et al, 391 So.2d 1170 (La.1980).
No precautions were taken against burglary. Many people had access to the building in which the plaintiff was allowed to store his tools. Defendant’s repeated disclaimer of responsibility is without effect under these circumstances. Under the doctrine of respondeat superior, defendant is charged, if not by the president’s knowledge, through that of Mr. Olinde, the shop foreman, with the knowledge that plaintiff’s tools were deposited on company premises and it accepted them and drew benefit from the deposit. The president, Giambelluca, himself, knew that it was the practice of other employees to leave their tools overnight and apparently approved, at least tacitly, of such practice. The trial judge found that defendant was liable to plaintiff for the value of his tools in logical and well-written reasons for judgment. Under the circumstances and facts of this case, we find no manifest error in this ruling.
Finally, we find that plaintiff did not prove any loss of income as a result of this theft. A statement was made by plaintiff that he was laid off, (he was told) because of “lack of work.” No other reasons for the layoff were given or proven. Plaintiff was vague when asked about his earnings prior to, and subsequent to, the incident, stating he lost “roughly around $2,000.00.” No evidence was offered to prove any of the wages or wage losses. Plaintiff did not carry his burden of proof in this instance, and the trial judge was not manifestly erroneous in failing to award a sum for loss of income.
For the foregoing reasons, the judgment of the trial court in favor of plaintiff in the amount of $2,596.24 is affirmed. Each party will bear his own costs of this appeal.
AFFIRMED.

.Art. 2937. Degree of care required of depositary
Art. 2937. The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property. Art. 2938. Enforcement of obligation as to care of thing
Art. 2938. The provision in the preceding article is to be rigorously enforced:
1. Where the deposit has been made by the request of the depositary.
2. If it has been agreed that he shall have a reward for preserving the deposit.
3. If the deposit was made solely for his advantage.
4. If it has been expressly agreed that the depositary should be answerable for all neglects.