JgFITZSIMMONS, J.
Plaintiff, Tim Wilkinson, sued his employer, J. Ray McDermott, Inc., Marine Fabrication and Shipyard Operations (McDermott), and Air Logistics for damages he suffered when his truck was stolen. The damages sought included the value of the truck, his welding machine and gear, a customized welding bed, and several personal items left in the truck. Mr. Wilkinson also claimed lost wages, mental anguish, and inconvenience. The trial court rendered judgment in favor of defendants, and dismissed Mr. Wilkinson’s suit. Mr. Wilkinson appealed. We affirm.
When he was hired, McDermott told Mr. Wilkinson to catch a bus at the terminal at Air Logistics in Amelia, Louisiana, across from a McDermott facility. Air Logistics owned a parking lot adjacent to its helicopter service that was sometimes used by the McDermott employees who took the bus. Air Logistics knew that McDermott employees used the parking lot, but posted a sign that read, “NOT RESPONSIBLE FOR THEFT OR DAMAGE TO VEHICLES.” The parking lot was fenced, and locked at night, but was unattended. Mr. Wilkinson parked his truck on the parking lot, locked it, and took the key with him. He then boarded a bus that took him, and several McDermott employees, to Four-chon, Louisiana for their jobs. When Mr. Wilkinson returned two weeks later, the truck had been stolen.
At trial, defendants’ counsel reminded Mr. Wilkinson that in his deposition he testified that he saw the sign posted at the parking lot. Mr. Wilkinson stated that it had been a long time since the theft, and he no longer remembered seeing the sign. However, he did not deny his deposition statement. Mr. Wilkinson also admitted that he “assumed there must be some risk,” and asked if he could drive his truck to Fourchon. He was told that all the employees would be transported to Four-chon by bus.
As to damages, Mr. Wilkinson testified that his insurer reimbursed him for the truck and his welding machine. However, his policy did not cover the personal items in the truck. Mr. Wilkinson also stated that he missed a lucrative job opportunity because of the loss of his welding gear, but admitted that he turned down an offer from McDermott for continued employment.
A deposit “is an act by which a person receives the property of another, binding himself to preserve it and return it in kind.” La. C.C. art. 2926. ■ A “voluntary deposit | stakes place by the mutual consent of the person making the deposit and the person receiving it .” La. C.C. art. 2932. “Consent is implied when the owner has carried or sent the thing to the depositary, and the latter knowing that the thing had been sent, has not refused to receive it.” La. C.C. art. 2933. However, there must be a “mutual intent ... that by the act of accepting it the person who receives it has bound himself to safeguard it.” Coe Oil Service, Inc. v. Hair, 283 So.2d 734, 738 (La.1973). Having accepted the item in deposit, the depositary may not contract away his liability, the essential element of the contract of deposit. However, the depositary may specify “the nature of the deposit and the extent of his responsibility for the deposited items.” Insurance Company of North America v. Solari Parking, Inc., 370 So.2d 503, 507 (La.1979). The depositor has the burden of proving the contract of deposit and that the thing was *1171 damaged or was not returned. Upon proof of those facts, the depositor establishes a prima facie case of liability against the depositary. Thereafter, the burden is on the depositary to exonerate himself. Polk Chevrolet, Inc. v. Webb, 572 So.2d 1112, 1115 (La.App. 1st Cir.1990), writ denied, 575 So.2d 394 (La.1991).
The trial court found that Mr. Wilkinson failed to prove a contract of deposit by mutual consent with either defendant. We agree that no contract of deposit between McDermott and Mr. Wilkinson was proved. No evidence was submitted of any agreement on parking between McDermott and Mr. Wilkinson. Mr. Wilkinson alleged that McDermott ordered him to park on the lot, but submitted no evidence at trial on that issue. Mr. Wilkinson was not required to drive his fully equipped truck, with its customized bed and welding machine, to Amelia from his home in Texas. Mr. Wilkinson proved no basis for finding that McDermott agreed, expressly or implicitly, to act as a depositary for the truck. See and compare Harper v. Brown & Root, Inc., 391 So.2d 1170 (La.1980).
Whether Air Logistics accepted the role of depositary is more problematic. The legislative safe harbor provided by La. R.S. 9:2783 is not available. No notice that the lot was unattended was posted. However, the adoption of a specific safe harbor statute did not eliminate the prior jurisprudence or amend the law requiring mutual consent and allowing a business owner to limit his responsibility. See Sovereign Marine and General Insurance Company v. APCOA Parking Services, Inc., 487 So.2d 631, 634 (La.App. 4th Cir.1986). Although consent can be implied by acceptance of an item when the depositary knew “the thing had been sent,” such an implication cannot be found in light of a clear refusal to consent to a contract of deposit in the first instance. La. C.C. art. 2933; see La. C.C. art. 2932 (mutual consent is necessary). The consent or intent, express or implied, must include a realization that by accepting the item, the receiver is binding “himself to safeguard it.” Coe Oil Service, Inc., 283 So.2d at 738. Thus, the threshold issue is whether Air Logistics, by not specifically refusing to take Mr. Wilkinson’s truck, consented to a contract of deposit.
This is not a case of a commercial parking garage that accepted a fee for parking cars (thereby consenting to a contract of deposit), and then tried to waive its primary liability through signs that were not seen by the depositor. Only three facts hint at the possibility of a contract of deposit: The fenced land was used for parking cars; Air Logistics knew the McDermott employees sometimes used the lot; and Air Logistics did not bar McDermott employees from the lot. We find these facts.are not sufficient to evince mutual consent to a contract of deposit.
The parking lot here serviced a helicopter business, Air Logistics. Admittedly, Air Logistics knew that McDermott employees sometimes parked on the terminal lot. Air Logistics did not run the bus service or charge Mr. Wilkinson for parking in the lot. -No one testified that Air Logistics told Mr. Wilkinson to park on its lot. No one specifically saw the truck park, or accepted the truck for parking. The record contains no evidence of an agreement between McDermott and Air Logistics for parking. Mr. Wilkinson did not deny that he testified at deposition that-, he saw the posted sign refusing or waiving responsibility for theft, an essential element for a contract of deposit. He admittedly perceived some risk in parking a fully loaded, customized truck, for two weeks. Even so, Mr. Wilkinson chose to park the truck in the lot, locked the truck, took one set of keys with him, and left another in the truck. Under these circumstances, we cannot say that the trial court erred in finding that Mr. Wilkinson failed to prove that Air Logistics consented to a contract of deposit and agreed to act as a depositary for the truck.
*1172 For these-reasons, we affirm the judgment in favor of defendants. The costs of the appeal are assessed to Mr. Wilkinson.
AFFIRMED.