440 So.2d 966 (1983)
AETNA LIFE AND CASUALTY, Plaintiff-Appellee,
v.
John S. O'BRIEN, Defendant-Appellant.
No. 83-204.
Court of Appeal of Louisiana, Third Circuit.
November 9, 1983.
Rehearing Denied December 5, 1983.
*967 Richard M. Sandefer, Lafayette, for defendant-appellant.
Terri Rowe and Michael S. O'Brien, of Martin & Taulbee, Lafayette, for plaintiff-appellee.
Before DOMENGEAUX, GUIDRY and CUTRER, JJ.
CUTRER, Judge.
John S. O'Brien, accepted for safekeeping certain valuable items from his friend and business associate, Gerald M. Wormser. Six pieces of Wormser's jewelry, held by O'Brien, were insured by Aetna Life and Casualty, Inc. (Aetna). While these items, and others, were in O'Brien's possession, they disappeared. Aetna paid Wormser $18,000.00 for the pieces of jewelry which are now missing. Aetna, as conventional subrogee of Wormser, sued O'Brien for the recovery of the amount paid to Wormser under a "deposit" theory. The trial court awarded judgment in favor of Aetna for the sum of $18,000.00. O'Brien appealed. We affirm.

SPECIFICATIONS OF ERROR
O'Brien contends that the trial court erred in:
(1) Finding that O'Brien did not fulfill his obligation as a depositary; i.e., that he did not act as a prudent administrator; and
(2) Finding that the plaintiff (Aetna) proved that the jewelry had a value of $18,000.00.

SCOPE OF REVIEW
We note that O'Brien has not challenged the basic finding by the trial court that this case involves a depositor/depositary relationship. Therefore, our review of the questions presented by O'Brien will be limited to the application of our laws on deposit. We are further constrained in our review by the well-established jurisprudential rules which provide that the findings made by the trier of fact will be overturned only when clearly wrong or when a manifest error has been committed.

FACTS
John S. O'Brien and Gerald Wormser were business associates and, according to O'Brien, "exceptionally close" friends. At some time in late 1979 or early 1980, while Wormser and his wife were involved in marital difficulties, Wormser asked O'Brien to hold certain manila envelopes containing items which Wormser did not want his wife to have access to. O'Brien accepted the envelopes and hid them at his home. Almost immediately Wormser began the practice of periodically calling O'Brien and requesting that O'Brien deliver the envelopes to Wormser so that Wormser could inspect the contents of the envelopes. The calls from Wormser for such inspections became frequent and regular. So much so that O'Brien, instead of hiding the envelopes at his home, placed the envelopes in a locking briefcase to facilitate their easy transportation to Wormser. O'Brien owned the briefcase but gave the combination to Wormser.
Wormser's inspections of the contents of the envelopes were originally done in secret. After about five or six months of weekly or bi-weekly inspections by Wormser, during which period O'Brien testified they became "exceptionally close," O'Brien was no longer asked to leave the room when Wormser inspected the envelopes. According to O'Brien he saw Wormser add and remove cash, stocks, bonds, and "legal type documents, like his will" from the envelopes at various times. Also, shortly after this arrangement began, Wormser indicated that a particular "small envelope that had obviously something lumpy in it" contained jewelry.
*968 As Christmas of 1981 approached, during a time of relative marital calm for Mr. and Mrs. Wormser, the Wormsers planned an out-of-town trip. On December 23, 1981, O'Brien met with Wormser and Wormser again inspected several envelopes, removed some cash and Travelers Checks in O'Brien's presence, and returned the envelopes and briefcase to O'Brien. After this meeting Wormser departed on his vacation trip and O'Brien, with the briefcase in his car, made several business calls. Later in the afternoon, with his business calls completed, O'Brien spent several hours playing tennis at a local club and then returned to his home for the night. The next morning, December 24th, when O'Brien entered his office adjacent to his home, he noticed the briefcase containing Wormser's valuables was not where he normally kept it in his office (O'Brien's office was equipped with a burglar alarm). When O'Brien went to his car to retrieve the briefcase he found it was missing.
O'Brien testified that, after leaving Wormser sometime in the early afternoon of December 23rd, he did not handle the briefcase. While O'Brien is almost certain he locked his car at his several stops during the afternoon, he admitted the briefcase was easily visible from outside of the car and he does not recall noticing if the briefcase was still in his car after any one of his stops.
When O'Brien learned the briefcase was missing he immediately retraced his route of the prior day hoping to find the briefcase. He was unsuccessful. Not knowing how to get in touch with Wormser, and not sure if Wormser wanted to involve the police, O'Brien did not report the loss.
On January 4, 1982, Wormser contacted O'Brien from California. During their conversation O'Brien reported the loss to Wormser and Wormser asked O'Brien to immediately contact the police. The subsequent police investigation failed to recover Wormser's property.
Wormser filed a claim with Aetna seeking recovery, under a "Valuable Items Policy," for six pieces of jewelry which were in the briefcase. Aetna paid Wormser $18,000.00, the scheduled value of the six pieces of jewelry, and instituted the instant suit against O'Brien in its capacity as conventional subrogee of Wormser. The trial court, after a non-jury trial, rendered judgment in favor of Aetna. The trial judge, in his reasons for judgment, stated in part:
"This is an unfortunate case. Defendant [O'Brien] was trying to do his friend [Wormser] a favor by holding papers and valuables for him. He [O'Brien] was unaware of any legal relationship which thereby developed between them. He [O'Brien] was unaware of the legal consequences of his actions. Nevertheless, `ignorance of the law is no excuse.'

"The facts of this case make out a classic example of gratutious [sic] deposit. The Defendant [O'Brien] knew he was holding items of value for Mr. Wormser. This fact is proven beyond a doubt. He lost the items due to his negligence....."

"The Plaintiff [Aetna] proved that the jewelry in question was in the briefcase and that their value at the time of the loss exceeded $18,000.00....." (Emphasis added.)
The trial judge awarded judgment in favor of Aetna, against O'Brien, in the amount of $18,000.00 and condemned O'Brien to pay the costs of the suit. O'Brien has appealed raising the errors mentioned earlier.

THE LAW OF DEPOSIT
A deposit, essentially a gratuitous contract, involves the delivery of movable property by a depositor, Wormser, to a depositary, O'Brien, with the duty arising in the depositary to keep safe the item deposited. The deposit is complete upon delivery of the item and the consent of both parties; that is, the depositor consents to the depositary possessing the item and the depositary accepts the delivery of the item. Harper v. *969 Brown & Root, Inc., 391 So.2d 1170 (La. 1980).[1]
The duty of a depositary is set out in Civil Code art. 2937, which provides:
"The depositary is bound to use the same diligence in preserving the deposit that he uses in preserving his own property."
In the case of Mercer v. Columbia Equipment Co., Inc., 409 So.2d 1285, 1287 (La. App. 2nd Cir.1982), writ den., 413 So.2d 507 (La.1982), the court addressed the burden of proof in a deposit case as follows:
"Once the depositor proves the existence of a contract of deposit and the loss of the deposited articles, there is a presumption that the depositary has not fulfilled his obligation to act as a prudent administrator. Harper v. Brown & Root, Inc., supra, p. 1173.

"It follows that, in this case, it became incumbent upon the defendant depositary to exonerate itself from liability by proving, as an affirmative defense, that it had acted as a prudent administrator in safeguarding the deposited property, ...."
In Harper v. Brown & Root, Inc., 398 So.2d 94, 95 (La.App. 3rd Cir.1981), (on remand from the Louisiana Supreme Court for determination of quantum), this court held: "... under our law the depositary is bound to restore the precise object which he received, however, if unable to return the precise object received he is responsible to the depositor for its value."
Keeping in mind the above principles of the law of deposit and the facts of this case we will address O'Brien's specifications of error.

O'BRIEN'S DUTY AS DEPOSITARY
As noted earlier the duty of a depositary, to safeguard the items deposited in his care, requires the depositary to act as a prudent administrator. This duty imposes a high standard of conduct on the depositary. So much so in fact that if a deposited item is lost while in the possession of the depositary the depositary is presumed to have failed in his duty. We have reviewed the record and find no error in the trial judge's ruling which, in effect, finds that O'Brien failed to overcome this presumption.
O'Brien attempted, at trial and in his brief to this court, to shift the responsibility for the deposited items back to Wormser, the depositor. This argument centers mainly on the fact that Wormser did not fully disclose to O'Brien the specific nature of each item deposited; this theory presumes that, had O'Brien been aware, more specifically, of the items he held, he would have treated them differently. This argument is disposed of by Civil Code art. 2943 which provides:
"The depositary should not seek to know what are the things confided to him, if they are shut up in a box, or in a sealed cover."
There is no provision in our law to change the duty owed by a depositary when the depositary is not particularly aware of the items entrusted to his safekeeping. Article 2943 contemplates the exact deposit situation found in this case; i.e., the deposit of a sealed container. Wormser and Aetna cannot be protected less by our law because O'Brien was not privy to the contents of the envelopes he agreed to hold.

PROOF OF THE VALUE OF THE LOST ITEMS
O'Brien complains that the trial court erred in finding that Aetna proved the value of the pieces of jewelry which are missing. The trial judge was presented with the testimony of Wormser who described the six pieces of stolen jewelry. Written appraisals and expert testimony was presented as to the value of five of the six pieces of jewelry. We cannot say that this proof was insufficient or that the trial judge was clearly wrong in accepting such proof; neither does O'Brien question these valuations which totaled $11,500.00. O'Brien's argument as to value is limited to the proof offered regarding the sixth piece of jewelry, a wedding ring. The ring in question was insured by Aetna for $6,500.00. The record does not contain a *970 written appraisal of this ring. However, Aetna's expert, in response to a hypothetical question which included a description of the ring, stated that such a ring could be worth between $4,000.00 and $9,000.00. The trial judge apparently believed the ring was proven to be worth at least its $6,500.00 insured value and awarded Aetna that amount. Such proof, by expert testimony in response to hypothetical questions, is good and sufficient. This assignment of error has no merit.
In summary, as the trial judge stated, this is a classic example of a gratuitous deposit. O'Brien agreed to hold certain valuable items for his friend, Wormser. A presumption exists that a loss which occurs during such a deposit is caused by the depositary's failure to act with the required diligence. O'Brien did not overcome this presumption. The value of the items lost was adequately proven and this value, since the precise items are no longer available, was due to Wormser from O'Brien. Aetna, after paying Wormser under a policy of insurance, as subrogee of Wormser, has the right to collect the value from O'Brien.
For these reasons, the judgment of the trial court is affirmed. The costs of this appeal are to be paid by defendant-appellant, John S. O'Brien.
AFFIRMED.
NOTES
[1] See Civil Code articles 2926, 2928-30, 2932 and 2933.