PLOTKIN, Judge.
Appellant/third-party defendant Herbert Pellegrini seeks review of the trial court’s finding that he is liable to appellee/defen-dant Hardie Maloney for the loss of a briefcase containing $31,300 worth of coins, $12,300 worth belonging to Maloney and $19,000 worth belonging to plaintiff Geor-gie Simon. We affirm.

Facts

The facts of this case are not contested. On May 20, 1986, Ms. Simon entrusted 14 gold and silver coins to her ex-husband, Maloney, to take to the Georgia Numismatic Association coin show in Atlanta, Georgia. He was to try to sell the coins, for which he would receive a seven percent commission.
Pellegrini traveled to the coin show along with Maloney and his girlfriend, Ann Williams. The two men, who were friends, had previously traveled to approximately 40 to 50 coins shows together. Just before they got ready to leave the Waverly Hotel, where the show had been held and where Pellegrini had stayed, for the trip back to New Orleans, Maloney and Ms. Williams went up to Pellegrini’s room. Pellegrini would not permit Ms. Williams to use the bathroom because he wanted to checkout before the deadline and avoid being charged for another day. Ms. Williams and Maloney helped Pellegrini carry his three pieces of luggage to the lobby. While Pellegrini checked out, Ms. Williams went to the ladies’ room in the lobby of the hotel.
While Ms. Williams was in the bathroom, Maloney decided to go get the car, on the suggestion and insistence of Pellegrini. Maloney testified at trial that he resisted the suggestion because he was carrying a briefcase containing Ms. Simon’s coins, as well as the coins that he had brought to and purchased at the show. Maloney stated that he wanted to wait until Ms. Williams returned so that they could all walk to the car together for protection. However, after being assured by Pellegrini that he would watch the briefcase, Maloney went to get the car. Maloney set the briefcase down beside Pellegrini’s three bags in front of the hotel.
When Maloney returned with the car, Pellegrini walked up to the vehicle carrying all three pieces of his own luggage, but left Maloney’s briefcase in front of the hotel. When Maloney asked about the whereabouts of the briefcase, Pellegrini replied that he did not know where it was. It was never found.
*927 Applying Louisiana law governing deposits, the trial court found in favor of plaintiff, Ms. Simon, on the original demand and in favor of the defendant, Maloney, on the third-party claim. Pellegrini alleges that the. trial judge erred in three ways: (1) failing to consider or observe the legal distinction between the duty of compensated and gratuitous depositaries, (2) failing to find that Maloney was himself at fault in leaving the coins in the care of Pellegrini because Pellegrini was essentially an unreliable person and (3) failing to find that Maloney’s obligations to Simon were personal and could not be delegated to Pelle-grini.

Louisiana’s Law Governing Deposits

La.C.C. art. 2926 defines “deposit” as follows:
A deposit, in general, is an act by which a person receives the property of another, binding himself to preserve it and return it in kind.
Deposits are generally considered to be gratuitous contracts. Aetna Life and Cas. Co. v. O’Brien, 440 So.2d 966, 968 (La.App. 3d Cir.1983). They are accomplished by consent of the parties combined with delivery of the property subject to the contract. Id. Once the deposit is perfected, the depositary becomes “bound to use the same diligence in preserving the deposit that he uses in preserving his own property.” La. C.C. art. 2937.
La.C.C. art. 2938 states as follows:
The provision in the preceding article is to be rigorously enforced:
1. Where the deposit has been made by the request of the depositary.
2. If it has been agreed that he shall have reward for preserving the deposit.
3. If the deposit was made solely for his advantage.
4. If it has been expressly agreed that the depositary should be answerable for all neglects.
Apparently relying on La. C.C. arts. 2937 and 2938, Pellegrini asserts that the trial court incorrectly applied the same duty of care to his contract with Maloney as applied to Maloney's contract with Ms. Simon. He seeks to distinguish between the two contracts on the basis of the fact that Malo-ney was to receive a seven percent commission on any sale of coins belonging to Ms. Simon, saying that Maloney is thus a “compensated depositary” while he is merely a “gratuitous depositary.” He states in brief that as gratuitous depositary he is “bound” only “to use the same diligence in preserving the deposit that he uses in preserving his own property” and insinuates that the duty of care assigned to Maloney should somehow be .greater.
This argument is not supported by the Codal articles or the jurisprudence interpreting those articles. The Codal articles do not assign a different standard of care, but instead simply state that the duty is to be “rigorously enforced” against compensated depositaries (subsection 2 of art. 3728), as well as against several other groups of depositaries who receive a benefit from the deposit.
As appellee points out, arguably Pellegri-ni could be considered a member of one or more of the categories of depositaries who receive a benefit from the deposit enumerated in La.C.C. art. 2938. The facts, as found by the commissioner, not contested by Pellegrini, indicate that the deposit of Maloney’s briefcase was made at Pellegri-ni’s request (subsection 1). Additionally, the deposit might be considered to have been made solely for Pellegrini’s advantage (subsection 3) since Maloney went to get the car so that Pellegrini would not have to walk to where it was parked.
However, it is unnecessary for us to reach this question because the facts establish that Pellegrini failed to exercise even the minimum level of duty owed by a depositary — to use the same diligence in preserving the deposit that he uses in preserving his own property. La.C.C. art. 2937. The facts show that when Maloney drove up in front of the hotel, Pellegrini approached the car carrying all three of his bags; he left Maloney’s briefcase in front of the hotel.
In Mercer v. Columbia Equipment Co., Inc., 409 So.2d 1285 (La.App. 2d Cir.), writ denied 413 So.2d 507 (La.1982), the court *928 established the following shifting burdens of proof in cases involving deposits:
Once the depositor proves the existence of a contract of deposit and the loss of the deposited articles, there is a presumption that the depositary has not fulfilled his obligation to act as a prudent administrator.
It follows that, in this case, it became incumbent upon the defendant depositary to exonerate itself from liability by proving, as an affirmative defense, that it had acted as a prudent administrator in safeguarding the deposited property....
In the instant case, once Maloney proved the existence of the deposit and loss of the property, the burden shifted to Pelle-grini to exonerate himself from the presumption of breach of his duty to Maloney. Pellegrini failed to meet that burden. Therefore, the trial court correctly held Pellegrini liable to Maloney for his loss of the briefcase and coins.
This result is not changed by the fact that Maloney also owed Ms. Simon the duty of caring for her coins in the same manner in which he cared for his own property. The trial court correctly held that Maloney was personally liable to Ms. Simon for her loss, but that Pellegrini was liable to Malo-ney for the entire loss. The trial court’s judgment does not impermissibly relieve Maloney of his obligation to Ms. Simon, as Pellegrini’s third assignment of error suggests.
Regarding Pellegrini’s second assignment of error — that Maloney was at fault in entrusting the coins to Pellegrini because he was essentially not a reliable person — nothing in the record establishes Pellegrini’s lack of reliability as a matter of fact. No medical testimony regarding Pel-legrini’s alleged mental problems was presented. Additionally, Pellegrini himself admitted that the alleged problems had never been discussed with Maloney. Malo-ney presented uncontradicted expert testimony concerning the custom and practice of coin dealers to leave their coins in the care of other dealers. The evidence indicated that such practice was the principal reason coin dealers, such as Maloney and Pellegrini, traveled to shows together.
CONCLUSION
For the above and foregoing reasons, the trial court’s judgment holding Pellegrini liable to Maloney for the entire $31,100 loss is affirmed. The judgment is also affirmed in all other respects.
AFFIRMED.