PROVIDENCE WASHINGTON INSURANCE COMPANY, INC. and Action Delivery Services, Inc.

v.

INDEPENDENT WRECKER AND TOWING, INC.

No. CV 89–1047–LC.

United States District Court, W.D. Louisiana, Lake Charles Division.

June 20, 1990.

---

Charles N. Harper, Jones, Tete, Nolen, Hanchey, Swift & Spears, Lake Charles, La., for plaintiff.

Louis D. Bufkin, McHale, Bufkin & Dees, Lake Charles, La., for defendant.

## OPINION

VERON, Senior District Judge.

This action arises out of an accident which occurred on Interstate 10 near Welsh, Louisiana. An 18 wheel tractor-trailer wrecked and strew its cargo along the interstate. Defendant, Independent Wrecker and Towing, Inc. ("Independent"), was called by the Welsh Police Department to clear the interstate.

The truck involved belonged to Action Delivery Services, Inc. ("Action"). Action is insured by Providence Washington Insurance, Co. ("Providence").[1] The goods being hauled by Action were bound for delivery to K-mart.

### Jurisdiction and Venue

The Court has jurisdiction of the matter on the basis of diversity of citizenship, 28 U.S.C. § 1332. Providence is a Delaware corporation with its principal place of business in New York. Action is a Texas corporation with its principal place of business in Texas. Independent is a Louisiana corporation with its principal place of business in Louisiana. The amount in controversy exceeds $10,000, exclusive of interest and costs.

Venue is proper under 28 U.S.C. § 1391 as this is the district where the defendant resides and it is also where the claim arose.

### The Accident Scene

The accident occurred in the early morning hours of January 6, 1989. Independent arrived on the scene at approximately 2:15 a.m. after being called by the Welsh Police Department. Independent's owner, John Giaimis, Sr. ("Giaimis"), was one of the first to arrive. He was driving one of the heavy-duty wreckers.[2]

---

1. Providence paid Action $52,568.34 and was subrogated to Action's rights "against any person or corporation liable for the loss." There was a $1000 deductible under the policy.

2. The only other Independent employees that were mentioned as working the site were Anthony (Tony) Giaimis and Tim Kessinger.

Giaimis testified that he was pressured by the police to get the interstate cleaned up as soon as possible so that it could be reopened. He stated that to speed matters up he hired bystanders to help in the clean-up, paying them $15–$20 per hour in cash. He has no record of the payment and also could not tell the Court how he kept up with the hours worked. Giaimis also stated that he hired inmates from the Jefferson Davis Parish Jail, paying $75 per inmate, plus $100 for a deputy to oversee them, for a total of $475.

The cargo was picked up both by hand and by front-end loader. Some of it was sorted out and loaded onto the trailers, while the rest was scooped up and deposited in the dumpster. Giaimis testified that he considered the cargo in the dumpster to be junk.

Giaimis testified that he constantly saw people stopping their cars, getting out and taking merchandise from the highway and median where it had been strewn. He said that he did nothing more to stop the looting than to yell at the people to stop. He made no attempt to contact the police who were approximately 2000 yards away diverting traffic.[3] Giaimis also testified that he gave no one permission to remove any of the cargo.[4] He also denies that any of his employees took cargo or authorized anyone else to take cargo from the scene.

Glen Rogers ("Rogers"), a claims adjuster from GAB, was assigned the claim. He arrived on the scene at approximately 10:30 a.m. Rogers testified that he did not see anyone stealing merchandise and that no one told him about merchandise being stolen.

Independent utilized the following equipment in the cleanup:
(a) Two (2) heavy-duty wreckers
(b) One (1) 45 foot hydraulic trailer
(c) One (1) 45 foot box trailer
(d) One (1) front-end loader
(e) One (1) light-duty wrecker
(f) One (1) industrial-sized waste bin leased from Waste Management.

3. The deputy paid $100 to oversee the inmate labor also apparently did nothing to stop the looting.

He observed inmates and Independent's employees picking up merchandise. The front-end loader was scooping up cargo and dumping it into the dumpster. Rogers testified that he saw the goods loaded into the dumpster and that while some of the items were damaged, some had just come out of their packaging. By the time he arrived most of the large items had been picked up.

### The Storage Site

The merchandise was taken to Independent's yard for storage. The merchandise was stored in four separate locations on the property. The cargo placed in the dumpster remained there and the dumpster was placed outside Independent's yard. Eventually, it was moved inside the yard. Some of the cargo was also stored in the 45 foot box trailer. The trailer was locked and Giaimis was the only one with a key. The trailer leaked. Additionally, cargo was stored inside a building and under a tarpaulin underneath a metal canopy.

Rogers testified that he saw the dumpster outside Independent's fence and he stopped and took pictures. No precautions had been taken to protect the goods in the dumpster. They were in a soggy and wet condition, unlike the condition they were in when he saw them at the accident scene.

### The Inventory

Ms. Joyce Reifel ("Ms. Reifel"), a salvor with American Salvage and Recovery, conducted an inventory of the merchandise stored in Independent's yard on February 24, 1989. The inventory lasted three days.

After inventorying the goods she found, Ms. Reifel calculated that $17,096.24 worth of goods were missing (priced at cost). She calculated this by comparing the inventory with the invoices listing the goods to be delivered.[5]

4. Jefferson Davis Parish Sheriff Dallas Cormier testified that Giaimis told him to take some damaged containers of floor wax to use at the jail.

5. Thirty-eight televisions were listed in the invoices. Ms. Reifel found five in her inventory, all of which were broken. The other thirty-three were missing.

She calculated the salvage value of the goods she inventoried at only $900.00. She loaded the goods and took all of them with her, except those in the dumpster which she stated were a total loss.

### The Traffic Stop

At 4:00 a.m. on January 11, 1989, Sergeant Michael Johnson ("Sgt. Johnson") of the Lake Charles City Police Department stopped a GMC Jimmy driven by Robert Roth ("Roth"). There were three additional passengers in the vehicle, one of whom was Anthony Giaimis ("Tony").[6] Sgt. Johnson stated that he was positive that the person involved was Tony. Not only did he produce his drivers license, but Sgt. Johnson knew Tony from earlier meetings. Tony was an employee of Independent and Sgt. Johnson had met him working car accidents.

The back end of the truck was loaded with merchandise carrying K-mart tags. Sgt. Johnson saw rice cookers, televisions, headphone stereos and cassette stereos. All appeared to be brand new and were in their original containers. All appeared to be undamaged.

Sgt. Johnson talked to Roth and Tony separately. Roth told Sgt. Johnson that he had worked the wreck, helping to unload the wrecked trailer. He further stated that he had purchased the merchandise in his truck from Independent Wrecker for $700.00. Tony told Sgt. Johnson that the merchandise was damaged in the wreck and that it had been awarded to him for working the wreck.

### The Bill

The total bill issued by Independent for cleaning up the wreck and storing the goods was $30,548.12. $15,975.00 was for the cleanup and $14,573.12 for storage.

▇ Independent was called to the scene of this accident by the Welsh Police Department. Plaintiffs had absolutely no say

in which wrecking company would take care of removing the wrecked vehicle and do the cleanup work. This is definitely *not* an arms length deal with parties in equal bargaining positions. The fees charged by Independent therefore must be reasonable. While Jefferson Davis Parish (the site of the accident) has no ordinances governing wrecker operations, the Calcasieu Parish ordinances are a guide to this Court in determining the reasonableness of the fees charged.

Independent charged $150.00 per hour for sixteen hours for each of two heavy-duty wreckers. We find this charge to be excessive and award, based upon the Calcasieu Parish ordinance, $142.50 for the first hour and $100.00 for each hour thereafter. For 2 wreckers, this comes out to $3,285.00.

Independent also charged $150.00 per hour for twenty-one hours for each of two trailers used, one a 45 foot hydraulic trailer and one a 45 foot box trailer. We find this charge to be excessive. The trailers are less expensive to operate than the wreckers. They have no motors and require no fuels to operate. They just sit there and wait to be loaded. We therefore award one-half of the amount awarded for the wrecker ($71.25 is allowed for the first hour and $50.00 per hour for each hour thereafter.) For two trailers for twenty-one hours each, the total is $2142.50.

Independent charged $75.00 per hour for twenty-one hours ($1575.00) for the front end loader. This charge is allowed. The charge of $75.00 per hour for four hours ($300.00) for the light-duty wrecker is also allowed.

$50.00 per hour for twenty-one hours ($1050.00) is charged for Giaimis' supervisory services. This charge is allowed.

▇ Independent also charges $25.00 per hour for fourteen hours for eight laborers.

---

6. When called to testify, Tony denied everything about the incident, including his friendship with Roth and his presence at the stop. Tony admitted taking some cassette stereos from the dumpster, but denied taking anything else. He stated that some of the stereos taken from the dumpster worked.

Based on his demeanor, the testimony of Sgt. Johnson and Tony's impeachment by felony convictions, the Court finds that Tony's testimony is totally incredulous and without weight.

As set forth earlier, Independent claims to have hired bystanders and inmates to help in the cleanup. With regard to the bystanders, Independent has no records of who it hired, how long these people worked, their social security numbers, the amount paid, etc. As Independent cannot substantiate their claim, payment of bystanders must be disallowed. Independent also paid $475.00 to Ted Gary, Chief Deputy Sheriff of Jefferson Davis Parish, for inmate labor. $375.00 was for the five inmates and $100.00 for the supervising deputy. $75.00 per day for inmate labor is clearly excessive. And again, there is no documentation regarding these workers. The $100.00 paid for the deputy sheriff is also disallowed. If Independent wishes to make such payments to build up good will with the local law enforcement officials, it is free to do so, but it may not pass on these costs to its customers who are not in a position to bargain.

There was testimony that two of Independent's employees (Tony Giaimis and Tim Kessinger) were on the scene. Recovery is allowed for them (two men at $25.00 for fourteen hours or $700.00).

Independent claims $250.00 for miscellaneous expenses. They provide receipts for the following purchases: dinner at Hunter's Harlequin Steakhouse, $58.54; rakes, $29.86; a meal at Dairy Queen, $19.10; and soft drinks, $7.47. Only these expenses which can be documented are allowed ($114.97). Also allowed is the $100.00 administration fee.

Independent charges $25.00 per day for 42 days each for the storage of the tractor trailer and rig. This charge is excessive. In accordance with the Calcasieu Parish ordinance, we allow $10.00 per day per unit for the storage of the trailer and rig for a total of $840.00 ($10.00 × 42 × 2).

Independent also charges $200.00 per day for fifty-five days for the storage of the cargo in the box trailer, under the canopy and in the building. Charges for the dumpster were $1474.00 ($1179.00 from Waste Management plus $295.00 (25%) sublet fee). We find these charges to be greatly excessive. Using the Calcasieu Parish ordinance as a guide, we allow $10.00 per day, per storage area, or $40.00 per day, for 55 days ($2,200.00).

The total recovery allowed for Independent is $12,307.47.

### Missing and Damaged Merchandise

 Ms. Reifel calculated that $17,096.24 worth of merchandise was missing. It is difficult for this Court to see how great droves of people could have stopped along Interstate 10, not far from the police, and stolen $17,096.24 worth of cargo off of the roadway. In light of Sgt. Johnson's testimony we can come to no other conclusion than that the merchandise disappeared through Independent's fault. Either they failed to properly secure the property or they allowed their employees an opportunity to carry away merchandise. Providence and Action need not prove how the merchandise was lost. Rather, "once the existence of the deposit is established and loss of or damage to the property while deposited, a presumption is raised that the loss resulted from lack of due care on the depositary's part, and the burden is then on the depositary to exonerate himself from fault." *Folger Coffee Company v. M/V Medi Sun*, 492 F.Supp. 988, 992 (E.D.La. 1980) (citations omitted).[7] Independent has failed to exonerate itself. As stated before, the Court finds unconvincing the argument that the goods were stolen by passersby at the accident site. Independent also argues that it is not responsible for the loss if the goods were taken by Tony Giaimis. This claim is without merit. Independent has "produced no direct evidence to prove that the cause of the loss was other than its failure as a depository to safeguard the property." *Grabert v. James C. Noel Flying Service*, 360 So.2d 1363 (La.App. 3rd Cir.1978), *cert. denied*, 363 So.2d 536 (La.1978). In *Grabert* the

---

7. Independent argues that it is not a depositary. This argument is without merit. Independent charged for the storage of the cargo. It was therefore under an obligation to use the same diligence in preserving the cargo that it would use to preserve its own property. La.C.C. Article 2937.

Court held the flight service liable for the loss of an airplane stolen and crashed by a part-time employee who came in after hours and took the plane.

■ Independent also properly failed to protect the cargo which it did store. Rogers and Ms. Reifel both testified that the box trailer leaked. Certainly any undamaged merchandise placed in the dumpster was damaged by exposure to the elements.

The Court finds, based upon the testimony of Rogers and Sgt. Johnson and upon the pictures taken at the scene, that a substantial number of the missing items were not damaged. Additionally, the storage used by Independent damaged the remaining items, therefore greatly reducing their salvage value.

This brings the Court to the difficult task of fixing damages. "While damages may not be speculative, ..., neither should the Court hesitate to use its equitable powers to draft the most accurate estimate possible, where a party reasonably establishes a loss...." *Austin v. Parker*, 672 F.2d 508, 521 (5th Cir Unit A 1982) (citations omitted). "A defendant whose wrongful act creates the difficulty is not entitled to complain that the amount of the damages cannot be accurately fixed." *Austin*, 672 F.2d at 522, citing *Rynveld v. Dupuis*, 39 F.2d 399, 400 (5th Cir.1930).

The cargo aboard the truck was valued at $53,568.00. The Court finds that equitable relief will be to award plaintiff's one-fifth of the value of the cargo or $10,-713.60 less the $900.00 salvage value ($9813.60).

### Attorney's fees

■ Independent seeks to collect attorney's fees under the authority of La.R.S. 9:2781.[8] Independent is not entitled to attorney's fees in the instant case. Plaintiffs should not be penalized for disputing a highly exorbitant bill. In order to recover attorney's fees under 9:2781, not only must the claimant show that he "made written

demand therefor *correctly setting forth the amount owed ...*", *Scarborough v. Nelson*, 371 So.2d 1261 (La.App. 3rd Cir. 1979) (emphasis in original), but he must also secure a favorable judgment on the account. Independent's highly inflated bill cannot possibly be described as setting forth the correct amount and while judgment is rendered in their favor in part on Independent's demands, they cannot claim to have successfully recovered the amount sued for.

Plaintiffs in this action are entitled to receive $9,813.60. Defendant is entitled to $12,307.47. The difference in these two amounts, $2,493.87, is hereby awarded to the Defendant. Costs are to be shared equally by the parties.

---

8. La.R.S. 9:2781 provides in pertinent part: "A. When any person fails to pay an open account within fifteen days after receipt of written demand therefor correctly setting forth the amount owed, that person shall be liable to the claimant for reasonable attorney fees for the prosecution and collection of such claim when judgment on the claim is rendered in favor of the claimant...."